1  Kristin L. Marker (State Bar No. 278596)
2  kmarker@qslwm.com
   Quilling, Selander, Lownds,
3  Winslett & Moser P.C.
4  6900 N. Dallas Parkway, Suite 800
   Plano, TX, 75024
5  (214) 560-5442
6  (214) 871-2111 Fax
   **Counsel for Trans Union LLC**
7

8
                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

| 11 | CYNTHIA SOLER, | Case No. 2:20-cv-08459-DSF-PLA |
|----|---|---|
| 12 | Plaintiff, | |
| 13 | v. | **DEFENDANT TRANS UNION LLC'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| 14 | TRANS UNION, LLC AND NELNET SERVICING, LLC, | |
| 15 | Defendants. | |
| 16 | | |

17  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

18      PLEASE TAKE NOTICE THAT the motion of Defendant Trans Union LLC
19  ("Trans Union") to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil
20  Procedure 12(b)(6) is set for hearing on November 23, 2020, at 1:30 p.m. or soon
21  thereafter as the matter may be heard in Courtroom 7D, of the above entitled Court
22  located at 350 W 1st Street, Los Angeles, California 90012. Defendant's motion will
23  be based on this Notice of Motion, the attached Memorandum of Points and
24  Authorities, the pleadings and papers on file herein, and such further argument and
25  evidence as may be presented at the hearing of the motion. This Motion is made
26  following the conference of regional counsel for Trans Union and Plaintiff's counsel
27  pursuant to L.R. 7-3, which took place on October 16, 2020, and in the following
28  week through subsequent communications.

DATED: October 23, 2020         QUILLING, SELANDER, LOWNDS,
                                WINSLETT & MOSER P.C.


                                By: */s/ Kristin L. Marker*
                                Kristin L. Marker
                                Counsel for Trans Union LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY

Cynthia Soler ("Plaintiff") brought this action alleging violations of the Fair Credit Reporting Act ("FCRA") in connection with the reporting of her Nelnet Servicing, LLC ("Nelnet") accounts (the "Accounts"). Plaintiff does not deny that she fell behind on the Accounts and that, at the time they were closed, the Accounts were 120 days past due. Based on information furnished by Nelnet, Trans Union reported the accounts as closed in December 2015, last updated in December 2015, with a balance of $0, no past due amount, and with payments 120 days past due from April 2015 through December 2015. Plaintiff alleges that by reporting her accurate, but derogatory payment history, Trans Union violated the FCRA "because it makes it look like the Plaintiff is still late on these account." *See* Complaint, Dkt. 1, at ¶ 23. However, based on the pleadings and applicable precedent, Trans Union's reporting is neither inaccurate nor misleading, and Trans Union is entitled to Plaintiff's Complaint being dismissed with Prejudice as a matter of law.

Accuracy aside, Plaintiff also failed to adequately plead all required elements of her FCRA claims, or that Trans Union acted willfully. Further, Plaintiff's alleged damages are not recoverable and are inadequately pleaded. Finally, Plaintiff failed to plead how any of her alleged injuries are attributable to Trans Union. Accordingly, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

## II. APPLICABLE LEGAL STANDARD

### A. 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must raise the right to relief beyond the speculative level, and a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a motion to dismiss, the Supreme Court instructed lower courts to consider "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, the court is not required to accept, as true, legal conclusions couched as factual allegations. *Id.* Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "But where the well-pleaded facts do not merit the court to infer more than the mere possibility of misconduct, the complaint…has not 'show[n]'…'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)).

In considering a 12(b)(6) motion, the court should accept all well-pleaded facts in the Complaint as true and draw all inferences in the plaintiff's favor. While all material allegations must be taken as true, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Indeed, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences are . . . insufficient to defeat a motion to dismiss for failure to state a claim." *Scroggins v. Equifax Info. Solutions LLC, et al.*, 2019 WL 3037588, at *1 (D. Ariz. July 11, 2019) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 628 F.3d 992, 993 (9th Cir. 2010)); *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**B.     The Court May Consider Documents Outside the Complaint**

In addition to the pleadings, the court may consider documents "whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160-61 (9th Cir. 2012); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1065 (N.D. Cal. Sept. 30, 2010) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

4

1  Additionally, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Scroggins*, 2019 WL 3037588, at *1. A plaintiff need not include or explicitly allege the contents of a document in the complaint for the court to consider it, as long as the "plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As many courts have held, exhibits evidencing how an account reported can be considered in a motion to dismiss. *See Neabors v. Equifax Info. Servs. LLC, et al.*, 2019 WL 3208805, at *1, n.1 (S.D. Cal. July 16, 2019); *Butler v. Equifax Info. Servs., LLC, et al.*, 2019 WL 2498939, at *2, n.1 (C.D. Cal. April 3, 2019); *Zemelka v. Trans Union LLC, et al.*, 2019 WL 2327813, at *2 (D. Ariz. May 31, 2019); *Scroggins*, 2019 WL 3037588, at *1-2.

Plaintiff's Complaint explicitly references and relies on her correspondence to Trans Union and how her Nelnet Accounts were reporting on her credit file. Dkt. 1, ¶¶22-23. The reporting of Plaintiff's Nelnet Accounts is not just referred to extensively in the Complaint--it constitutes the entirety of her claims. How Plaintiff's Accounts reported at the time of her dispute is paramount. Accordingly, the Court may freely consider Plaintiff's dispute correspondence, and how her Nelnet Accounts appeared on her Trans Union credit file before and after the dispute. These documents are attached to the Declaration of Donald Wagner, filed herewith, as Exhibits A-1, A-2, and A-3. The Court may consider these exhibits without converting Trans Union's Motion to Dismiss to a motion for summary judgment.

5

## III. ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Complaint Should be Dismissed Pursuant to Rule 12(b)

#### 1. Trans Union is a Consumer Reporting Agency

Trans Union is a "consumer reporting agency" ("CRA") as defined by the FCRA. Dkt. 1, ¶ 16. Nelnet is a "furnisher" of information and provides its credit information to consumer reporting agencies, such as Trans Union. Dkt. 1, ¶ 17. Plaintiff's claims relate to the way Nelnet reported the Accounts to Trans Union, and the way the Accounts appeared on her Trans Union credit file disclosure. Dkt. 1, generally.

#### 2. Plaintiff Must Plead an Inaccuracy to State an FCRA Claim

Plaintiff asserted claims under 15 U.S.C. §§ 1681e(b) and 1681i of the FCRA. Dkt. 1, ¶¶ 45-68. Both §§ 1681e(b) and 1681i require a plaintiff to plead and prove an inaccuracy in his credit report or credit file. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156–60 (11th Cir. 1991). Specifically, the text of § 1681e(b), "…implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." *Id.* at 1156; *see also Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009) (per curiam). If the consumer fails to satisfy this initial burden, "…the consumer, as a matter of law, has not established a violation of [§ 1681e(b)]." *Cahlin*, 936 F.2d at 1156. Similarly, without an inaccuracy, there can be no claim under § 1681i. *Id.* For the same reasons, without pleading an inaccuracy, Plaintiff does not have a valid claim under either § 1681(i) or § 1681e(b).

The existence of an inaccuracy is a necessary element of Plaintiff's FCRA claim. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *see also Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling

cannot establish that Trans Union violated the FCRA – either § 1681e(b) or § 1681i(a)(1)(A)."); *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) (quoting *Guimond*, 45 F.3d at 1333) ("In order to make out a prima facie violation under § 1681e(b) a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.").

### 3. Plaintiff's Nelnet Accounts are Accurate

Plaintiff complains that her Nelnet Accounts appeared on her Trans Union credit file with an inaccurate "Pay Status: Account 120 Days Past Due." Plaintiff argues that "[i]t is impossible and incorrect for an account that was fully satisfied which brought it current with a "0" balance as of to still be reporting as late as of 9/15/2018. … [I]t makes it look like the Plaintiff is still late on this account that was previously fully satisfied." Dkt. 1, ¶23. In taking that position, Plaintiff confuses the date of her Trans Union credit file disclosure (September 15, 2018) with the date of the information on the Nelnet Accounts (December 8, 2015). Plaintiff is misreading the *historical* pay status of 120 days late as the *current* pay status as of 2018. It is on that inaccurate proposition that Plaintiff attempts to build her case.

#### a. The Nelnet Accounts Must Be Viewed in Their Entirety and Are Accurate on Their Face

In determining whether an account is accurately reported, the account information must be considered in its entirety, instead of focusing on a single field of data. *See Meeks v. Equifax Info. Servs., LLC*, No. 1:18-CV-03666, 2019 WL 1856411, at *6 (N.D. Ga. Mar. 4, 2019), *adopted*, 2019 WL 1856412, at *1 (N.D. Ga. Apr. 23, 2019) ("[W]hen the Santander account is viewed as a whole, it is undeniable that there exists no ongoing obligation for payment."); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019); *Seay v. Trans Union, LLC*, No. 7:18-cv-204, 2019 WL 4773827, at *5 (M.D. Ga. Sept. 30, 2019). In this case, when viewing the Accounts in their entirety it becomes abundantly clear that Plaintiff's Nelnet Accounts were accurately reported

and does not make it look as if "Plaintiff is still late." To demonstrate how the Nelnet Accounts were allegedly reporting, both before and after she submitted a dispute to Trans Union. *See* Declaration of Don Wagner; Ex. A-2, Trans Union credit file disclosure dated September 7, 2018 and Ex. A-3, reinvestigation results dated September 15, 2018. The Dept of Ed/Nelnet Accounts reflect that they: 1) have a balance of $0; 2) were last updated on December 8, 2015; 3) were closed on December 8, 2015; 4) were 120 days past due from April 2015 through November 2015; 5) were closed due to being transferred, and 6) had no past due amount:



*Id.* The only reasonable reading of the Accounts in their entirety is that Plaintiff was 120 past due from *April 2015 through November 2015*, after which the Accounts were closed and transferred in 2015. Plaintiff owes no money on the Accounts, and the Accounts have been closed for years. There is no indication, as Plaintiff contends, that she is "still late on the accounts," so the Motion to Dismiss should be granted.

8

    **b. Plaintiff's Legal Theory has been Rejected by other Courts**

Plaintiff's legal theory has been rejected by other courts. In *Alston v. Equifax Info. Services, LLC*, No. TDC-13-1230, 2014 WL 6388169 (D. Md. Nov. 13, 2014), Alston's Wells Fargo mortgage account was transferred or sold, and the account was closed (identical to the reporting of Plaintiff's Nelnet Accounts). Equifax reported the account with a balance of $0 and status of "over 120 days past due." *Id*. Alston argued that the reporting was inaccurate and sought to enjoin Equifax from reporting the account with a status of over 120 days past due. *Id*. In denying Alston's Motion for a Temporary Restraining Order, the court rejected Alston's argument that the "status" of the account referred to the "current" state of the account. The court held:

> Considering the report *as a whole*, [Equifax's] interpretation is entirely reasonable. Because the report also states that the account had been "transferred/sold" in November 2011 and that it had a balance of $0 and a "past due" amount of $0 … the report makes clear that Alston is no longer late on payments that she is currently obligated to make. Thus, it is more likely that the "Status–Over 120 days past due" reference is intended to alert potential creditors that Alston had been over 120 days past due at some point during the history of the loan. . . . Thus, there is a strong likelihood that the "Status" section of the report records the prior payment history of the account, not the current account status, and that the report is therefore accurate.

*Id*. at *5 (emphasis added).

Similarly, in *Grossman v. Barclays Bank Delaware*, No. 12-6238, 2014 WL 647970 (D.N.J. Feb. 28, 2015), Grossman settled his Barclays account for less than the full balance and Barclays reported the account to the consumer reporting agencies as closed, $0 balance, and a status of "over 120 days past due." *Id*. at *4,

9

n.4. Grossman argued that reporting a status of over 120 days past due was inaccurate. In granting Barclays' motion for summary judgment, the court found:

> Here, the Plaintiff repeatedly makes the unsupported allegation that "the *current status* on the report ... is inaccurate [and] has not been corrected after the reinvestigation." … The Court finds that Barclay's reporting of Plaintiff's account, which was done pursuant to [industry] guidelines, was not patently incorrect or misleading. In fact, Plaintiff even agrees that when he accepted the settlement of the Account with Barclays, certain amounts were more than sixty days past due while others were more than one hundred twenty days past due.

*Id*. at *10 (emphasis added).

Just like the plaintiffs in *Alston* and *Grossman*, Plaintiff's legal theory in this case is in conflict with a plain reading of the Nelnet Accounts. Plaintiff has failed to point to an inaccurate or misleading[1] item on her Trans Union credit file or credit report. Accordingly, Trans Union is entitled to a dismissal as a matter of law.

### c. Reporting Accurate, Derogatory Information Does Not Violate the FCRA

Plaintiff does not deny that she was 120 days late on her Nelnet Accounts. Dkt. 1, *generally*. Instead, Plaintiff asserts that reporting her accurate, derogatory payment history makes it look like she "is still late" on the Accounts. However, when discussing the history of the FCRA, the Eleventh Circuit pointed out that "Congress enacted FCRA with the goals of ensuring that CRAs imposed procedures that were not only 'fair and equitable to the consumer,' but that also met the 'needs of commerce' for accurate credit reporting." *Cahlin*, 936 F.2d at 1158. "Thus, the

---

[1] A credit report can be inaccurate when it is "patently incorrect" or when it is "misleading in such a way and to such an extent that it can be expected to *have an adverse effect*." *Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 415 (4th Cir. 2001); *Pedro v. Equifax, Inc*. 868 F.3d 1275, 1281 (11th Cir. 2017)(emphasis added).

10

standard of accuracy embodied in [the FCRA] is an *objective measure* that should be interpreted in an *evenhanded manner* toward the interests of both consumers and potential creditors in fair and accurate credit reporting." *Id.* (emphasis added).

In *Cahlin*, the Eleventh Circuit held a CRA did not violate the FCRA when it reported accurate, derogatory information about a consumer related to a closed, charged-off account. *Cahlin*, 936 F.2d at 1158–59. The court explained a CRA "has no duty to report only that information which is favorable or beneficial to the consumer." *Id.* at 1158. The issue presented in *Cahlin* was whether including derogatory information (a charge-off) about a debt that was later settled by the consumer for an amount less than the full balance, would render the information inaccurate. *Id.*

The plaintiff in *Cahlin* leased a vehicle with GMAC and subsequently defaulted on the lease. *Id.* at 1154. After default, GMAC reported the balance owed on the lease account as a charge off/bad debt. *Id.* at 1155. The plaintiff settled the account with GMAC for less than the total amount owed after it was charged off. *Id.* Cahlin filed suit, alleging the account should be updated to remove any historical, derogatory information. *Id.* at 1154–55. The Eleventh Circuit disagreed: "[W]e cannot conclude that a bad debt which has been charged off by the creditor and is later settled for an amount less than the original balance due should be reported without any derogatory references on a credit report." *Id.* at 1158. In other words, reporting accurate, derogatory information does not give rise to an FCRA violation. The court further noted the charged-off account information was accurate and "clearly of interest to potential creditors and would be effectively hidden by a credit report that treated the account as being in good standing." *Id.*

Here, Plaintiff's Nelnet Accounts were reporting accurate, derogatory information (120 days past due) from April 2015 through November 2015, and were unequivocally clear that each Account was closed and transferred, and no balance was owed. Plaintiff was *not* still late on the Accounts, with no continuing obligation.

11

Clearly, when viewed by an *objective measure and* in an *evenhanded manner*, the Nelnet Accounts are not inaccurate or misleading.

### d. Plaintiff's Subjective Belief is Insufficient

In her Complaint, Plaintiff argues that reporting a pay status of 120 days past due on an account that has a $0 balance is "extremely misleading because it makes it look like the Plaintiff is still late." Dkt. 1, ¶23. However, Plaintiff's subjective belief is not sufficient to support a claim of inaccuracy. *See Barakat v. Equifax Info. Servs., LLC,* No. 16-10718, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017) ("Courts have repeatedly held that a personal opinion is 'mere speculation that the notation was misleading' and is therefore insufficient to support a claim of inaccuracy under the FCRA."); *Shaw v. Equifax Info. Sols., Inc.,* 204 F. Supp. 3d 956, 961 (E.D. Mich. 2016); *Bailey v. Equifax Info. Servs.,* LLC, No. 13-cv-10377, 2013 WL 3305710, at *5 (E.D. Mich. July 1, 2013). Similarly, the fact that the consumer himself might claim to be misled does not give rise to a cause of action under the FCRA. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1317 (11th Cir. 2018).

At the very least, Plaintiff must plead that a prospective lender would be materially misled. *See Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *4 (W.D. Tenn. Aug. 8, 2019) ("Materially misleading information prevents a reasonable prospective lender from understanding the information presented. … In this case, a prospective lender would not be led to believe that Plaintiff had a current monthly payment obligation."); *Meeks v. Equifax Info. Servs., LLC*, No. 1:18-cv-03666-TWT-WEJ, 2019 WL 1856411, at *7 (N.D. Ga. Mar. 4, 2019), *adopted,* 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019) ("Given all of these notations, … it is not plausible that the existence on the credit disclosure of plaintiff's former monthly payment obligation could materially mislead a prospective lender about the nature of his current obligations."); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465-TES, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019).

12

Furthermore, there has been no adequate pleading by Plaintiff that any creditor has been misled or that Plaintiff has suffered any specific adverse action because a creditor was misled. Plaintiff generally states that the "negative tradeline(s) reported by Nelnet on Plaintiff's Trans Union credit report have been viewed by third parties all to the detriment and loss of the Plaintiff." This vague statement is insufficient to support a claim that a creditor has been misled or has taken a specific adverse action based on the reporting of the Accounts. Without that, Plaintiff failed to adequately plead a claim and Plaintiff's Complaint should be dismissed. *See Hinkle v. CBE Group*, No. CV 311-091, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012), *adopted*, No. CV 311-091, 2012 WL 676267 (S.D. Ga. Feb. 29, 2012) ("[T]he factual matter offered by Plaintiff in her amended complaint establishes nothing beyond speculation as to the 'mere possibility' of a violation of the FCRA, without presenting 'enough facts to raise a reasonable expectation that discovery will reveal' unlawful conduct.") (quoting *Twombly*, 550 U.S. at 556).

   e. **Similar Attacks on Accurate Credit Reporting Have Been Rejected**

By analogy, the Court should look to the "payment terms" cases that have been decided across the country, including many in the Ninth Circuit. In those cases, consumers sued CRAs and furnishers, arguing that accounts that were closed should not report with the contractual monthly payment amount because that made it look as if they "still owed" a monthly payment on a closed account. In analyzing the payment terms cases, the courts noted that they should review the account in its entirety, not focus on a single field. *See Shanae Franklin v. Trans Union, LLC*, No. 5:19-cv-00888, at *5 (C.D. Cal. Oct. 8, 2019) ("Trans Union's credit disclosures state that the accounts are charged off or closed, and have a zero balance. Therefore, the reporting of historical monthly payment terms on a closed or charged off account with no balance does not imply Plaintiff has an ongoing obligation to make monthly payments on the account.") Courts almost uniformly found the accounts were

13

accurate and not misleading. For example, in *Gibson v. Equifax Information Services, LLC*, No. 5:18-cv-00465, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019), the Middle District of Georgia was faced with the issue of whether reporting monthly payment terms on a closed account rendered an account inaccurate. In rejecting the plaintiff's argument, the court noted:

> Plaintiff is mistaken. While Defendant's reporting of Plaintiff's trade line does have a positive scheduled monthly payment, it also clearly shows the accounts are closed and the balances are all $0. The Northern District of Georgia, when confronted with an identical case, dismissed the plaintiff's claim. This Court agrees with the Northern District's ruling that 'when the [Plaintiff's] account is viewed as a whole, it is undeniable that there exists no ongoing obligation for payment.

*Id*. (citations omitted).

Similarly, an account that is closed, with a $0 balance, that reports monthly payment terms, was found to be both technically accurate and not materially misleading. *Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *4–5 (W.D. Tenn. Aug. 8, 2019) ("A reasonable prospective lender would understand the report showed a past obligation only, and the report is, therefore, not materially misleading.").

The reasoning of the payment terms cases applies with equal force to the case at bar. When the Nelnet Accounts are viewed in its entirety, they are neither inaccurate nor misleading. Accordingly, Trans Union's Motion to Dismiss should be granted.

**4.     Trans Union is Entitled to a Dismissal of Plaintiff's Willfulness Claim**

Plaintiff alleges that the conduct, actions and inactions by Trans Union were "willful". See Dkt. 1, ¶53, 57, 62, and 67.

**a.     Plaintiff's Willfulness Claim Fails Without an Inaccuracy**

As discussed above, Plaintiff's § 1681e and § 1681i claims fail because no inaccuracy exists. It necessarily follows, therefore, that his willfulness claim also

14

fails. *See Messano v. Experian Info. Solutions, Inc.*, 251 F. Supp. 3d 1309, 1316 (N.D. Cal. May 8, 2017) (dismissing willfulness claim where plaintiff failed to plead inaccuracy).

### b. Plaintiff Has Not Pleaded the Required Elements of a Willfulness Claim

Even if the Court considers Plaintiff's willfulness claim, it fails as a matter of law because Plaintiff has not and cannot plead the required elements of a willfulness claim. Under such circumstances, willfulness claims may be properly dismissed on a 12(b)(6) or 12(c) motion. *Thompson v. Bank of Am., N.A.*, 14-cv-03603, 2015 WL 3550707, at *2 (N.D. Cal. Jan. 27, 2015)(finding similar allegations conclusory and insufficient to support a willfulness claim). "Willfully" means either knowingly or with reckless disregard. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58–59 (2007). To state a willfulness claim, Plaintiff must allege (1) that Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language; and (2) how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Id.*; *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). Plaintiff has unequivocally failed to plead either.

Plaintiff must show Trans Union acted in a manner that made it highly probable harm would follow. *Safeco Ins. Co.*, 551 U.S. at 69. Where the statutory text and authoritative guidance allow for more than one reasonable interpretation, a defendant merely adopting one such interpretation cannot be found to have willfully violated the FCRA. *Id.* at 70 n.20. A CRA's interpretation of its obligations under the FCRA can be erroneous and still not be considered willful. *Id.* at 69–70. Stated another way, an interpretation that favors the agency must be "objectively unreasonable" under either the text of the Act or guidance from a court of appeals or regulatory authority that might have warned a defendant away from the view it took. *Levine*, 554 F.3d at 1318.

15

1	Here, Plaintiff has failed to allege that Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language.  "An interpretation that favors the agency must be 'objectively unreasonable' under either the text of the Act or 'guidance from the court of appeals or Federal Trade Commission that might have warned [the agency] away from the view it took.'" *Vanaman v. Nationstar Mortg. LLC*, No. 2:15-cv-00906, 2017 WL 1097189, at *3 (D. Nev. Mar. 22, 2017) (citing *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009)).  Neither the failure to correct alleged errors after receiving notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies in a consumer's report alone, can amount to willful noncompliance with the FCRA.  *See Barrepski v. Capital One Bank (U.S.A.) N.A.*, No. 11-30160, 2014 WL 9355983, at *12 (D. Mass. Jan. 24, 2014); *Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 869 (M.D.N.C. 2013); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 648 (S.D. Ala. 2007) (citation omitted); *Valvo v. Trans Union LLC*, No. 04-70S, 2005 WL 3618272, at *8 (D.R.I. Oct. 27, 2005).  Going even further, a CRA's failure to identify inaccurate information after receiving a dispute is still not enough to establish a willful violation of the FCRA. *Robertson v. Experian Info. Sols.*, No. 1:CV-09-0850, 2010 WL 1643579, at *5 (M.D. Pa. Apr. 22, 2010).

	Here, Plaintiff has neither alleged nor asserted either required element of her willfulness claims.  She has failed to allege that Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language, and has failed to allege how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless.  Accordingly, Plaintiff's conclusory allegations of willfulness are insufficient and should be dismissed, with prejudice.

## IV. CONCLUSION

Trans Union's reporting of Plaintiff's Nelnet Accounts was accurate and not misleading, and Plaintiff has failed to plead a viable FCRA claim. Accordingly, Trans Union's Motion to Dismiss should be granted as a matter of law

DATED: October 23, 2020

QUILLING SELANDER LOWNDS
WINSLETT & MOSER, P.C.

By: */s/ Kristin L. Marker*
Kristin L. Marker
Counsel for Trans Union LLC

# CERTIFICATE OF SERVICE

**STATE OF TEXAS, COUNTY OF COLLIN**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Collin, State of Texas. My business address is 6900 N. Dallas Parkway, Suite 800, Plano, TX 75024.

On October 23, 2020, I served true copies of the following document(s) described as **DEFENDANT TRANS UNION LLC'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☒   **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 23, 2020, at Plano, Texas.

　　　　　　　　　　　　　　　　　　*/s/ Kristin L. Marker*
　　　　　　　　　　　　　　　　　　Kristin L. Marker

**SERVICE LIST**

| | |
|---|---|
| Michael F. Cardoza | Jonathan Charles Sandler |
| Mike.Cardoza@cardozalawcorp.com | jsandler@bhfs.com |
| Lauren B Veggian | Brownstein Hyatt Farber Schreck LLP |
| lauren.veggian@cardozalawcorp.com | 2049 Century Park East, Suite 3550 |
| Cardoza Law Corporation | Los Angeles, CA 90067 |
| 548 Market St, #80594 | (310) 500-4600 |
| San Francisco, CA, 94104 | (310) 500-4602 Fax |
| (415) 488-8041 | ***Counsel for Nelnet Servicing, LLC*** |
| (415) 651-9700 Fax | |
| ***Counsel for Plaintiff*** | |