The Cardoza Law Corporation

Michael F. Cardoza, Esq. (SBN: 194065)

Mike.Cardoza@cardozalawcorp.com

Lauren B. Veggian, Esq. (SBN: 309929)

Lauren.Veggian@cardozalawcorp.com

548 Market St. #80594

San Francisco, CA 94104

Telephone:   (415) 488-8041

Facsimile:    (415) 651-9700

*Attorneys for Plaintiff,*

Cynthia Soler

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **CYNTHIA SOLER** | Case Number: |
|  | 2:20-cv-08459-DSF-PLA |
| Plaintiff, | **PLAINTIFF'S OPPOSITION** |
|  | **TO DEFENDANT TRANS** |
| v. | **UNION'S MOTION TO** |
|  | **DISMISS PLAINTIFF'S** |
| **TRANS UNION, LLC, and** | **COMPLAINT** |
| NELNET SERVICING, LLC |  |
|  | Complaint Filed: September 15, 2020 |
| Defendants. |  |
|  | Date: November 23, 2020 |

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

1

Time: 1:30 pm

Courtroom: 7D

_____

/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

# **TABLE OF CONTENTS**

Table of Authorities – pg 4

Introduction – pg 6

Procedural Background – pg 6

Statement of Facts – pg 6

Legal Standard – pg 8

Argument – pg 10

 A Jury Has Already Determined This Exact Issue In Favor Of Plaintiff's Position:  It Is Inaccurate For An Account With A $0 Balance To Report Its Pay Status As "Past Due" – pg 11

 Plaintiff Plead an Inaccuracy in her Complaint – pg 13

 Plaintiff's Nelnet Accounts are Not Accurate – pg 14

 The "Pay Status" represents the current status of an account – pg 15

 Viewing the Entirety of the Nelnet Accounts Supports Plaintiff's Allegations in the Complaint – pg 16

 TU has previously argued that the pay status represents the current status of an account – pg 17

 TU's Cited Caselaw Outside the Ninth Circuit is Distinguishable – pg 19

 TU is Not Entitled to a Dismissal of Any Claim Asserted Against it in This Case – pg 21

 Plaintiff Adequately Plead Her Claim of Willfulness Against TU – pg 21

Conclusion – pg 24

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

<u>Bell Atl. Corp. v. Twombly</u>, -- pg 11, 12
550 U.S. 544, 546, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)

*Cuvillier v. Taylor*, -- pg 8
503 F.3d 397, 401 (5th Cir.2007)

*Dura Pharms., Inc. v. Broudo*, -- pg 8
544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)

*Erickson v. Pardus*, -- pg 8
551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)

*Gilligan v. Jamco Dev. Corp.*, -- pg 8
108 F.3d 246, 249 (9th Cir. 1997)

*Gorman v. Wolpoff & Abramson,* -- pg 13, 14
*LLP*, 584 F.3d 1147 (9th Cir. 2009)

*Her v. Equifax Info. Servs., LLC,* -- pg 18
No. 1:18-CV-05182-CC-RGV, 2019 WL 4295280, at *5 (N.D. Ga. July 12, 2019),
<u>report and recommendation adopted sub nom.</u> <u>Her v. Equixfax Info. Servs., LLC,</u>
No. 1:18-CV-5182-CC-RGV, 2019 WL 4295279 (N.D. Ga. Aug. 9, 2019)

*Levine v. World Fin. Network Nat. Bank,* -- pg 24
554 F.3d 1314, 1318 (11th Cir. 2009)

*Lormand v. US Unwired, Inc.*, -- pg 8
565 F.3d 228, 232 (5th Cir., 2009).

*Marchisio v. Carrington Mortg. Servs., LLC,* -- pg 23
No. 14-14011-CIV, 2016 WL 10568065, at *14 (S.D. Fla. Sept. 13, 2016), on
reconsideration in part, No. 14-14011-CIV, 2017 WL 5483260 (S.D. Fla. Jan. 5,
2017), and aff'd in part, rev'd in part and remanded, 919 F.3d 1288 (11th Cir.
2019)

*Rachael Macik v. Trans Union, LLC, et al.*: -- pg 13
U.S. District Court for the Southern District of Texas, Galveston Division (Case
3:14-cv-44

*Seamans v. Temple Univ.,* -- pg 14
744 F.3d 853 (3d Cir. 2014)

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

*Sheffer v. Experian Info. Solutions, Inc.,* -- pg 22
No. CIV.A.02–7407, 2003 WL 21710573, at *3 (E.D.Pa. Jul. 24, 2003)

*Smith v. HireRight Sols., Inc.*, -- pg 21
711 F. Supp. 2d 426, 435 (E.D. Pa. 2010)

*Zimerman v. Trans Union, et al.*: -- pg 18
U.S. District Court for the Eastern District of New York, Case No. 20-CV-00680

## STATUTES AND CODES

15 U.S.C. §1681e(b) – pg 13, 14, 17

15 U.S.C. §1681i(a)(1)(A) – pg 13, 17

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

## I.   <u>INTRODUCTION</u>

Plaintiff Cynthia Soler ("Plaintiff") brings this action against Defendant Trans Union, LLC's ("TU") and Nelnet Servicing, LLC ("Nelnet") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").   TU has filed a Motion to Dismiss every claim Plaintiff has asserted against it in the Complaint. TU's motion is without merit and should be denied in its entirety.

Plaintiff respectfully requests the Court deny TU's Motion to Dismiss in its entirety. However, in the event that this Court grant's TU's motion, in whole or in part, Plaintiff respectfully requests leave to amend the Complaint in order to cure Plaintiff's operative pleading of any perceived deficiencies.

## II.   <u>PROCEDURAL BACKGROUND</u>

This case was filed on September 15, 2020 against TU and Defendant Nelnet for violations of the Fair Credit Reporting Act. Specifically against TU, Plaintiff claims that TU failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit disclosure and files, TU failed to conduct a reasonable reinvestigation into whether the disputed information was accurate following a dispute by Plaintiff, TU failed to properly provide Nelnet with all information regarding Plaintiff's dispute, TU failed to review and consider all information submitted with Plaintiff's dispute, and TU failed to remove or update the disputed inaccurate piece of information from Plaintiff's credit disclosure/file.

TU is the only Defendant in this action to move to dismiss the case, and the instant motion is the only motion filed thus far in this case. Defendant Nelnet answered Plaintiff's complaint on October 23, 2020. TU's counsel and Plaintiff's counsel met and conferred telephonically regarding the instant motion on October 21, 2020, and, despite a detailed discussion, were apparently unable to avoid the filing of the instant motion by TU.

## III.   <u>STATEMENT OF FACTS</u>

TU misstates the facts and allegations of this case in its moving papers.

Plaintiff *does* deny that at the time the accounts at issue in this case were closed, that the accounts were 120 days past due – in fact, at the time the accounts were closed in December 2015, they were current and paid in full. Complaint, Dkt. 1 ("Compl.") ¶ 21. Plaintiff paid off the accounts at issue in this case in full in December 2015. Compl. ¶ 21. The balance on these accounts when they were closed in December 2015 was $0, as is reflected in the credit disclosure dated September 15, 2018. Compl. ¶ 23. Plaintiff's payment on the accounts at issue in this case brought them *current*, thus the payment status for the accounts *could not possibly be* 120 days past due. Compl. ¶ 23. However, the pay status on Plaintiff's TU credit disclosure dated September 15, 2018, states, "Account 120 days past due date." Compl. ¶¶ 22-23.

On August 17, 2018, Plaintiff mailed a dispute letter to TU stating that the pay status of the accounts at issue in this case, stated as "Account 120 days past due date," were inaccurate and misleading to potential credit grantors who would pull Plaintiff's credit disclosures. Compl. ¶¶ 23-24. TU responded to this dispute via a letter and updated consumer disclosure dated September 15, 2018, which left the pay status stated inaccurately, as "Account 120 days past due date." Compl. ¶ 23. The same report states that the balance on the accounts as of December 2015 is $0. Compl. ¶ 23. Plaintiff paid off the accounts at issue in this case on December 8, 2015. Compl. ¶ 21. Plaintiff believes that TU sent an ACDV to Nelnet when it received Plaintiff's dispute in August 2018. Compl. ¶ 25. Plaintiff believes that Nelnet verified it's reporting of the accounts as "account 120 days past due date" as accurate with TU, TU did no further investigation into the proper payment status for the accounts at issue, and simply continued to report the inaccurate payment status to Plaintiff's consumer disclosure. Compl. ¶¶ 26, 28, 31.  TU did not follow reasonable procedures to ensure that Plaintiff's credit report was as accurate as possible. Compl. ¶ 28. TU did not do a reasonable reinvestigation of Plaintiff's dispute of the accounts at issue in this case. Compl. ¶ 31.

Plaintiff has been damaged because of TU's failure to accurately report the accounts at issue in this case to his consumer disclosures. Compl. ¶¶ 40-44. Plaintiff

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

alleges actual damages in the form of loss of credit opportunity, loss of financial autonomy (ability to use credit), emotional distress, loss of time in dealing with this issue, pecuniary damage in the form of postage for the dispute to TU, and embarrassment. Compl. ¶¶ 40-44. Plaintiff's consumer disclosure has been viewed by third parties by way of hard inquiries, soft inquiries, and promotional inquiries, thus harming Plaintiff by potential lost opportunities to credit, whether Plaintiff applied for credit or whether she could have received a pre-approval offer from a credit grantor. Compl. ¶ 44. These are all concrete injuries that are alleged in the Complaint which TU's knowing failure to correct the inaccurate reporting upon Plaintiff's dispute directly contributed to. Compl. ¶¶40-44.

IV.  **LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2). '[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff.' *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). 'Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007))." *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1265 (C.D.Cal. 2007).

Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir., 2009). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). In deciding a motion

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

8

to dismiss, the court must accept as true the allegations of the complaint and draw reasonable inferences in the plaintiff's favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Inquiry into the adequacy of the evidence is improper. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). A court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "To survive a motion to dismiss pursuant to Rule 12(b)(6), factual allegations must be sufficient, when taken as true, to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact. [Citation.] A complaint may proceed even though proof seems improbable or recovery is very remote and unlikely. *Id.*" *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1212 (S.D. Cal. 2007).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true, construe the pleadings in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the plaintiff. *Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011). "The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003) [and additional citations]. *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1265 (C.D.Cal. 2007). Documents referred to in the complaint may be considered without converting the Rule 12(b)(6) motion into a motion for summary judgment, but any ambiguity in the documents must be resolved in favor of the plaintiffs. *Knievel v. ESPN,* 393 F.3d 1068, 1076-77 (9th Cir. 2005); *Int'l Audiotext Network, Inc. v.*

*AT&T,* 62 F.3d 69, 72 (2d Cir. 1995). Plaintiffs succeed in stating a claim for relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## V.    ARGUMENT

TU's only argues two issues in their entire motion to dismiss.  The first issue that TU argued was the that the two accounts at issue in this litigation are reporting accurately.   Plaintiff's complaint and her response will show that TU's first issue fails and their motion to dismiss should be denied.  The second issue that TU argued is that Plaintiff didn't allege or properly plead "willfulness".  Plaintiff's complaint and her response will show that TU's second issue fails as well and their motion to dismiss should be denied.

TU repeatedly misstates the allegations and facts of this case throughout their motion. TU's entire motion to dismiss is based on their false assertion that Plaintiff has only alleged that reporting an account accurately, but derogatorily, makes it appear as though she is still late on the two Nelnet accounts at issue in this case. This is simply false and is shown to be false on the face of the Complaint.

The *correct* recitation of facts and allegations in this case is that two of Plaintiff's accounts at issue in this litigation were completely satisfied, bringing them to a $0 balance.  To be clear, after 12/8/2015, Plaintiff did not owe Nelnet any money for either account. Compl. ¶ 21. Defendant Nelnet reported on December 8, 2015, to TU, the following information: balance $0, date updated 12/8/2015, date closed 12/8/2015, Pay Status: Account 120 Days Past Due Date . *See* TU's Exh. A-2. Plaintiff disputed the accuracy of the 120 days past due notation via written dispute to TU on August 17, 2018. Compl. ¶¶ 23-24.  After TU received Plaintiff's dispute letter, that they notified Nelnet of Plaintiff's dispute via an ACDV.   TU responded to Plaintiff with "dispute results" dated September 15, 2018, stating that the accounts' pay status were verified as accurate by Nelnet, and prepared an updated

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

report showing the two accounts were still reporting inaccurately as "Account 120 Days Past Due Date". ¶ 23. Plaintiff clearly and properly alleged in the complaint that the 120 days past due notation shown on the September 15, 2018, credit report TU prepared for Plaintiff in response to her dispute is factually inaccurate. Compl. ¶ 23. Plaintiff also alleged in the complaint that the 120 days past due notation shown on the September 15, 2018, credit report TU prepared for Plaintiff, as well as the July 23, 2020 credit report TU prepared for Plaintiff, is both factually inaccurate on its face *and* misleading to potential credit grantors because it makes it looks like the *current* status of the accounts (which have been satisfied in their entireties) is currently 120 days late for each month it reports after 12/8/2015. Compl. ¶¶ 22-23, 27, 32. Plaintiff's obligation to pay Nelnet for either of these accounts was extinguished the day the account went to a $0 balance (December 8, 2015). The pay status of "account 120 days past due date" on Plaintiff's credit disclosure in perpetuity does not accurately represent the extinguishment of the obligation to pay that followed the account payoff in December 2015 – it inaccurately states on its face there is still an outstanding obligation and provides a misleading misrepresentation to each possible credit grantor that Plaintiff has been late on this account every single day since December 8, 2015.

Plaintiff asks that the Court refer to the facts and allegations as stated herein and in the Complaint itself for a proper recitation instead of the facts as inaccurately stated in TU's motion, which repeatedly misrepresents the facts as stated and alleged in the Complaint.

### *A Jury Has Already Determined This Exact Issue In Favor Of Plaintiff's Position:  It Is Inaccurate For An Account With A $0 Balance To Report Its Pay Status As "Past Due"*

For Plaintiff's claims to be dismissed, there has to be no set of facts that a jury could plausibly rule in favor of her. *Please see* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)(Literal reading of *Conley's* statement construing Rule 8: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." 355 U.S., at 45–46, 78 S.Ct..)

TU's motion to dismiss should be denied because the exact same issues in this case has already been tried in front of a jury and they determined that reporting an account with a $0 balance, but with a late pay status is not only inaccurate, but a willful violation of the FCRA. What makes it more shocking is that TU knows how the jury ruled in the *Macik* case because they were also co-defendant in that case.

Plaintiff immediately satisfies the standard that the Supreme Court of the United States set in *Bell Atl. Corp. v. Twombly*. In *Macik,* Trans Union and JPMorgan Chase Bank reported Macik's account with a $0 balance, but nevertheless as having a pay status of 90 days past due date, even though the loan was satisfied/paid 4-5 years earlier. Macik needed a bigger home for her growing/blended family. Not knowing the proverbial land mine that had been placed in her credit file 4-5 years earlier, Macik applied for a mortgage. The loan officer looked at her credit report and reviewed her income to debt ratio and pre-approved her for approximately $385,000 loan. Macik then put a contract on the home of her dreams. The last stage of closing, and as a precaution due to the "mortgage scandals" of the past, FHA loans were required to have the consumer's information entered into a computer program called "Desk Top Underwriter, aka DU". On moving day, her loan officer called her to inform her that she had a problem. The "DU Findings" denied her because her Chase mortgage account was late, two or more months in the last twelve months from the date of the last credit report. The problem is that the Chase account was paid 4-5 years prior. It was later determined that the pay status reported her as 90 days past due. To be clear, the late pay status alone was responsible for her being denied a home, even though it was paid off years earlier. The verdict in *Macik* indisputably proves that the "pay status" field in the Trans Union credit report represents the "current" status of the account, not the past status. Macik disputed the account and it was verified to be accurate by Trans Union and Equifax. It is important to know, that Experian's policies and procedures prevent an

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

12

account with a $0 balance to report the pay status as past due.  Plaintiff's Counsel filed a FCRA claim against Trans Union, Equifax and JPMorgan Chase bank in the United States District Court in Galveston Texas.  Equifax and Trans Union settled prior to trial but Macik and Chase sat a jury in the box and tried the issue of what the "pay status" field really represents.  The jury ruled that to report an account with a $0 balance, but with a pay status that is past due is a willful violation of the FCRA. The jury awarded Macik $100,000.00 in punitive damages and $90,000.00 in actual damages.  please see *Rachael Macik v. Trans Union, LLC, et al.*: U.S. District Court for the Southern District of Texas, Galveston Division (Case 3:14-cv-44). Judge George C. Hanks, Jr. presiding.).

### *Plaintiff Plead an Inaccuracy in her Complaint*

TU argues that Plaintiff did not plead that there was an inaccuracy on her credit report/disclosure. This is false. Plaintiff specifically pleads in her complaint that the "Pay Status: Account 120 Days Past Due Date" for the two Nelnet accounts are inaccurate because both accounts were compliantly satisfied and reported $0 balances on December 8, 2015. Compl. ¶ 21. Plaintiff alleges that TU prepared a credit report and third parties viewed the inaccurate reporting. Compl. ¶ 42. Thus, Plaintiff has properly plead her §1681e(b) and §1681i claims.

In addition to the accounts being inaccurate on their face, Plaintiff *also* plead that the accounts at issue in this case are *also* misleading (in addition to being inaccurate) because the payment status of "account 120 days past due date" could mislead a potential credit grantor into thinking that these accounts are *currently* past due. Compl. ¶¶23, 32. The Ninth Circuit has ruled that a credit report is inaccurate on its face if it is so misleading that it may lead to adverse credit decisions. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) "a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely affect credit decisions" (quoting *Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988)).  It is interesting to note that  the Nineth Circuit in *Gorman* didn't state that the account had to cause a credit denial,

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

just that "it may be expected to adversely affect credit decisions". If Plaintiff were seeking credit/mortgage, she may be required to have no late payments on an account within the last year or two before the application for such credit/mortgage. A credit grantor seeing this "account 120 days past due date" notation on the account is likely to be mislead into thinking that Plaintiff is *currently late* on the two accounts at issue in this case, which would likely adversely affect the credit grantor's decision whether to extend credit/a mortgage to Plaintiff.

The Third Circuit added to the *Gorman* decision that a determination if an account misleads creditors is a question for the jury to determine if "technically accurate" information on a credit report was misleading in such a way that it could be expected to have an adverse effect. *please see Seamans v. Temple Univ.,* 744 F.3d 853 (3d Cir. 2014)(Whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect generally is a question to be submitted to the jury, on a claim under the FCRA contesting the reasonableness of an investigation. Fair Credit Reporting Act, §§ 607(b), 623(b), 15 U.S.C.A. §§ 1681e(b), 1681s–2(b).).

Thus, not only has Plaintiff plead that the payment status of "account 120 days past due date" is inaccurate on its face, Plaintiff has also plead that the misleading nature of the inaccurate reporting is itself inaccurate in the Ninth Circuit, per the *Gorman* decision. Plaintiff requests that the Court reject TU's argument that an inaccuracy was not properly alleged in the Complaint and deny TU's motion to dismiss in its entirety.

### *Plaintiff's Nelnet Accounts are Not Accurate*

TU argues that Plaintiff's Nelnet accounts at issue in this case are reported accurately. This is false. Plaintiff alleges that her accounts were completely satisfied and that all financial obligation as to Nelnet were extinguished, which caused both accounts to report a balance of $0 on December 8, 2015. Compl. ¶ 21. The "date updated" date on the accounts is December 8, 2015. *See* TU's Exh. A-2. The "date

14

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

closed" on the accounts is December 8, 2015. The balance as of December 8, 2015 is $0. *See* TU's Exh. A-2. The pay status for each account shows "account 120 days past due date." *See* TU's Exh. A-2. The "date closed" notes state "Maximum delinquency of 120 days in 4/2015…and in 12/2015." *See* TU's Exh. A-2. This last notation shows that as of the date updated, December 8, 2015, the accounts are being reported as being late *in December 2015*, which is *factually inaccurate*, as Plaintiff paid off both accounts in full on December 8, 2015.

Thus, while the accounts may have been 120 days late as of December 7, 2015, but after they were satisfied in full on December 8, 2015, they were not late at all.  Reporting the accounts as "120 days past due date" after December 8, 2015 is inaccurate on its face, as well as misleading.   Plaintiff's September 15, 2018, TU's credit report, which still reports the accounts as 120 days past due date is *objectively inaccurate*. *See* TU's Exh. A-2. This is plead in the Complaint. Compl. ¶¶ 21-23, 27, 32.

Plaintiff requests that the Court reject TU's argument that the Nelnet accounts were accurately reported and deny TU's motion to dismiss in its entirety.

### *The "Pay Status" represents the current status of an account*

The reason why the accounts are not reporting accurately is because the "Pay Status" represents the current status of an account, not the historical status as TU attempts to argue.  The current status of the account cannot be past due when the account has been fully satisfied with a $0 balance.

TU makes a feeble and conclusory two sentence argument that the accounts are accurate because the pay status represents the historical status of the account, "Plaintiff is misreading the *historical* pay status of 120 days late as the *current* pay status as of 2018. It is on that inaccurate proposition that Plaintiff attempts to build her case.".  *See* TU's motion at p.7 at ¶3.

The *Macik* verdict alone proves that the pay status of the account is the current status and not the historical status as TU made in their two-sentence argument.  In addition to the verdict, Chase filed a summary judgment in the *Macik* case.  The

court in the *Macik* case ruled that the pay status showing the account was 90 days late was reflecting a late status as of 2013, not in 2009 when the account was actually 90 days late but then paid in full, bringing the account current. *Please see Macik v. JPMorgan Chase Bank, N.A.,* No. CV G-14-044, 2015 WL 12999728, at *4 (S.D. Tex. May 28, 2015), report and recommendation adopted sub nom. Macik v. Trans Union, LLC, No. 3:14-CV-0044, 2015 WL 12999727 (S.D. Tex. July 31, 2015)(Problematically, for Chase, its own evidence appears to contradict its position. (Dkt. No. 76, Ex. B).[11] As set forth in the four pages of Guidelines submitted by Chase, "The Account Status" represents the name of a field that "[c]ontains the status code that properly identifies the ***current*** condition of the account as of the Date of Account Information." [Emphasis added]. (*Id.*). The Guidelines also reflect that the "The Payment Rating" field is merely a ***subset*** of "The Account Status" that is only utilized in reporting "[w]hen the Account Status" field contains specified codes (*e.g.,* "Code 13"[12])" or, in the absence of one of the specified codes being used, the field is "blank filled." (*Id.* at TU 368, 470). Thus, considering this evidence in a light most favorable to Macik as the non-moving party, a reasonable jury might very well conclude that Chase was, in fact, responsible for Macik's account being reflected as "currently" 90 days past due **in 2013** when the lender ran her credit report.

TU made nothing but a conclusory statement that the pay status represents the historical status. TU does not provide any insight into where they derived their conclusion other than "trust me". The *Macik* case and verdict show how the "pay status" field can seriously damage a consumer if reported inaccurately.

### *Viewing the Entirety of the Nelnet Accounts Supports Plaintiff's Allegations in the Complaint*

TU argues that looking at the accounts as a whole does not make it look like Plaintiff is still late on the account. This is only part of the issue. The accounts are objectively inaccurate on their face in addition to being misleading to potential credit grantors. If we look at the accounts as a whole, it shows that the date closed was

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

December 8, 2015, the balance is $0, the date updated is December 8, 2015, the pay status as of the updated date was "account 120 days past due date," and that there is a noted "maximum delinquency…in 12/2015." TU claims that the last 120 day late notation is for November 2015. *See* TU Motion p. 8, lns. 7-8. If we look at the document itself, or even the screenshot TU inserted into the body of it's motion, we see that this assertion is false. Right under "date closed: 12/08/2015," there is a notation stating, "Maximum delinquency of 120 days in 04/2015…and 12/2015." This shows that as of 12/2015, the account was being *inaccurately* reported as "account 120 days past due date," because Plaintiff paid off the account to the shows $0 balance on December 8, 2015.

This pay status was inaccurate as of December 8, 2015, it was inaccurate as of the report TU generated on September 15, 2018, on which the causes of action against TU in this case are based, and it was inaccurate when Plaintiff again checked her credit on July 23, 2020 and the "account 120 days past due date" payment status was still sitting on her TU report. Compl. ¶ 27. Having this inaccurate information on Plaintiff's consumer disclosure dated September 15, 2018, that was prepared in response to Plaintiff's dispute is a violation of §1681e(b) and §1681i *even without* addressing the misleading nature of the payment status. That being said, to continue to report that these accounts are "account 120 days past due date" and to continue to have that information on Plaintiff's disclosure 3 years (now 5 years) after the accounts were paid off in full is wholly misleading to potential credit grantors, who may require Plaintiff to have no late payments on their report within the last year or two.

Plaintiff requests that the Court reject TU's argument that viewed in their entirety, the accounts reporting 120 days late is not misleading and deny TU's motion to dismiss in its entirety.

***TU has previously argued that the pay status represents the current status of an account***

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

17

In a previous case, Trans Union has even argued the same position that Plaintiff is currently arguing in this case, that the pay status is the current status of the case. In the *Her* case, Trans Union actually argued that the account was accurate because it reported a $0 balance and the pay status was "Account paid in full, was a charge-off".   Trans Union admitted that a $0 balance should report a pay status "Account paid in full". *Please see Her v. Equifax Info. Servs., LLC,* No. 1:18-CV-05182-CC-RGV, 2019 WL 4295280, at *5 (N.D. Ga. July 12, 2019), <u>report and recommendation adopted sub nom.</u> Her v. Equixfax Info. Servs., LLC, No. 1:18-CV-5182-CC-RGV, 2019 WL 4295279 (N.D. Ga. Aug. 9, 2019)(Trans Union reported the Prosper account as being closed and having been transferred to another office with a $0 balance and a pay status indicating "Account paid in Full; was a Charge-off" and listed the terms of this account as "$871 per month, paid [m]onthly for 36 months[.]" [Doc. 13-4 at 5]. Her argues that Trans Union's reporting of a scheduled monthly payment of $871.00 for a charged off and closed account is inaccurate and thus violates the FCRA. [Doc. 15 at 1, 5-7]; see also [Doc. 1 at 2 ¶¶ 7-8]. Trans Union disagrees, arguing that the account was reported accurately, as a matter of law, since it "plainly indicates the account is 'closed,' 'account paid in full,' 'was a charge-off,' and has a $0 balance".).

A recent ruling was just issued in favor of Plaintiff's position. The court denied defendant's motion to dismiss on the exact issues as in this case.    *Please see Zimerman v. Trans Union, et al*.: U.S. District Court for the Eastern District of New York, Case No. 20-CV-00680. The *Zimerman* case has identical issues and claims as argued in this case.  Both Zimmerman and Plaintiff argue that it is not accurate to report an account's "pay status" either "30/60/90/120 days past due date" after the obligation to pay is extinguished, bringing the account to zero ($0) balance.   The *Zimerman* complaint states, [Specifically, the reporting of the payment status should not have stated "Account 120-149 days late," considering that the account was showing a zero balance.]. The Defendant in *Zimerman* filed a Rule 12(b)(6) motion, attempting to dismiss Zimerman's complaint, arguing the exact issues that Trans

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Union and Ocwen are currently arguing in this case. Specifically, the accuracy of reporting an account with a zero ($0) balance but with a current late pay status of 120 days past due. Zimerman's response even cites *Macik v. JPMorgan Chase Bank, N.A.*, 2015 U.S. Dist. LEXIS 185257 (S.D. Tex. May 28, 2015), a case that Macik received a verdict against JPMorgan Chase regarding the exact same issues and claims as with Zimerman and Plaintiff. A case that Plaintiff heavily relies on in his response to Trans Union's Rule 12(b)(6) motion. The *Zimerman* Court agreed with Plaintiff's position when he denied the defendant's Rule 12(b)(6) motion, allowing the case to go forward.

### *TU's Cited Caselaw Outside the Ninth Circuit is Distinguishable*

TU cites the *Alston* case, an out of circuit, district court ruling in Maryland to show that this status argument has been rejected. First, Maryland law is not controlling in the 9th circuit or in this district. Second, TU took the *Alston* out of context, ruled on a motion for injunction that the FCRA does not allow for. Third, *Alston* was decided prior to the *Macik* verdict on this exact issue. The *Alston* case was from a motion regarding an injunction in a FCRA case, which the FCRA does not permit. The Court in *Alston* and *Grossman* merely ruled that the Plaintiff didn't **prove** the account's late pay status was actually the current status of the account, which Plaintiff can prove in this case. The *Macik* verdict, as argued below proves that the pay status is a current status and not the past status of the account as Trans Union argues.

The *Alston* court did not rule as a matter of law that the pay status represented the "past status" as TU attempts to argue, far from it. The court simply stated that Alston didn't prove that it was the "current" status. Since then, a jury determined that it was the "current status" and that current status caused Ms. Macik to lose a home over the inaccuracy. The *Alston* case is not anywhere near analogous to the facts in this case. This is a continuation of the "viewing the account reporting as a whole" argument addressed in the previous section as well – the 120 days late reporting is still objectively inaccurate without even getting to the "misleading"

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

aspect of Plaintiff's allegations. The 120 days late was inaccurately reported to refer to 12/2015, per the notation under the "date closed" section. That is inaccurate. Additionally, leaving that inaccurate reporting on Plaintiff's disclosure years after the accounts are paid off is misleading in addition to being inaccurate. Plaintiff asks that the Court disregard the *Alston* case for these reasons.

Trans Union's citing of the *Meeks* case didn't even allege or argue the pay status issue.  They only argued that the account was charged off and showed under "Terms: $613 per month, paid monthly for 76 months".  The *Meeks* case isn't anything like the present case in front of this Court. The pay status was not an issue that was alleged to be inaccurate.

Just like the *Meeks* case, Trans Union's reliance on *Shanae Franklin v. Trans Union, LLC* case is again confusing because it does not have anything to do with the pay status of the account or any other issue that is argued in this case.  The *Shanae* case deals with the historical monthly payment terms, which is not an issue in this case.  This case deals with the pay status of the account, completely different and not even remotely related.  The terms of the accounts in this case has not been alleged or argued by the Plaintiff.  The terms in this case as shown by the TU's tradeline shows "Monthly for 120 Months".  TU relies heavily on an entire line of cases regarding a data field (Terms) that has absolutely nothing to do with this facts and issues in this case.

TU cites the *Grossman* case out of a district court in New Jersey, which refers to a Plaintiff who settled an account for less than full balance. Again, NJ caselaw is not controlling in the 9th circuit or this district.  Plaintiff satisfied the accounts in their entirety on December 8, 2015, and that was properly alleged in the Complaint. Compl. ¶ 21. In this case there was no settlement for less than balance due, and as such there was no leftover "technical" balance that could have accurately been reported as past due. The status as of December 2015 forward should have been paid in full. Plaintiff asks that the Court disregard the *Grossman* case for these reasons.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

The Courts in *Alston* and *Grossman* merely ruled that the Plaintiff didn't prove the account's late pay status was actually the current status of the account, which it is. The *Macik* verdict (see subsection (a) below) proves that the pay status is a current status and not the past status of the account as TU argues. The plain reading of Plaintiff's accounts at issue in this case is that the status is inaccurate, as well as misleading to potential credit grantors. Plaintiff has absolutely, properly plead that the pay status was objectively inaccurate. Compl. ¶¶ 21-23, 32. Plaintiff requests that the Court reject TU's attempted application of other, factually distinguishable cases outside of the 9th circuit, and deny TU's motion to dismiss in its entirety.

When the dust settles, a jury has determined that TU's reporting of Plaintiff's Nelnet accounts are inaccurate.

## TU is Not Entitled to a Dismissal of Any Claim Asserted Against it in This Case

Here again, TU argues that no inaccuracy is plead. This is simply false based on the allegations on the face of the Complaint. *See* Compl. ¶¶21-24, 27, 32. Plaintiff asks that the Court refer to the facts and allegations as stated herein and in the Complaint itself for a proper recitation instead of the facts as inaccurately stated in TU's motion, which repeatedly misrepresents the facts as stated and alleged in the Complaint.

### Plaintiff Adequately Plead Her Claim of Willfulness Against TU

TU argued that Plaintiff didn't allege specific policies and procedures. TU's argument fails because Plaintiff is not required to know specific policies and procedures and is not required to plead them. Plaintiff's Blanket statements that, "At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein" satisfied Rule 8. *Please see Smith v. HireRight Sols., Inc.*, 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010)(The Court finds that such allegations, while far from being detailed, undoubtedly satisfy Federal Rule of Civil Procedure 8's notice

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

pleading standard. Plaintiff puts Defendant on clear notice of the precise conduct which Plaintiff finds objectionable. Moreover, the Complaint provides three factual examples wherein Defendant allegedly engaged in the challenged conduct. Although the Complaint blanketly states that Defendant's conduct was malicious, intentional, reckless, and grossly negligent, the Court can reasonably infer that Defendant's repeated engagement in the same type of objectionable conduct without justification could, at minimum, rise to the level of reckless disregard. *See Sheffer v. Experian Info. Solutions, Inc.,* No. CIV.A.02–7407, 2003 WL 21710573, at *3 (E.D.Pa. Jul. 24, 2003) (noting that a willful violation may be found "where the evidence shows that inaccuracies in credit reports arise from something more than 'an isolated instance of human error which [the agency] promptly cure[s].' " (quotations omitted). The mere fact that Plaintiff cannot, at this juncture, either articulate any particular procedures or policies that Defendant internally maintains or describe alternative procedures that Defendant should have considered or adopted is not fatal to the claim. Rather, such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery. In short, Plaintiff's FCRA claim, where "fairly read," describes a process that gives rise to the plausibility of willful misconduct by Defendant.).

Plaintiff alleges in the Complaint that TU reported false and inaccurate information to Plaintiff's disclosure even after it knew or should have known the information was inaccurate, which is not assuring maximum possible accuracy. Compl. ¶ 28. Plaintiff alleges in the Complaint that TU did not do a good faith investigation into the disputed accounts Compl. ¶ 31. Plaintiff alleges that TU's procedures, as put into practice, are *not* assuring maximum possible accuracy of consumer disclosures, as shown by the fact that inaccurate information still appeared on Plaintiff's disclosure after her 2018 dispute. Compl. ¶ 33. All of these speak directly to willfulness on the part of TU – they were on notice that this information was inaccurate, they have a statutory duty to assure maximum possible accuracy and

a statutory duty to do a reasonable reinvestigation (not just parrot a furnisher's reporting), and they failed to correct the issue despite being aware of the issue – that constitutes knowing or in reckless disregard, at the *very* least for purposes of pleading willfulness in a Complaint.

TU cites many cases outside of the 9th circuit to support their proposition that willfulness cannot come from failing to identify an inaccuracy after a dispute is received. The issue here reaches further than that – the inaccuracy was identified for TU, and they failed to reinvestigate, instead choosing simply to parrot what Nelnet told it was "accurate." Had TU looked into this issue, the logic of being unable to be 120 days late when an account has been paid off should have triggered a "wait a minute" moment, and at least had TU ask more questions about why this was appearing as late when the account was paid off. It's worth noting here again that Experian has a policy that an account cannot be reporting with a $0 balance and a "pay status" of late. TU has the ability to implement that policy itself, yet here it chose to ignore the logical fallacy of a $0 balance and a late pay status. TU runs a risk of violating the FCRA every time it parrots a data furnisher after a dispute rather than conducting its own reinvestigation. Compl. ¶¶ 28, 31, 33. Plaintiff properly alleged willfulness on the face of the Complaint.  TU was on notice that reporting an account with a $0 balance with a late pay status was not only inaccurate, but a willful violation of the FCRA. *See Macik v. Trans Union, LLC, et al.* (S.D. Tex. 3:14-cv-00044). After the *Macik* verdict, TU should have known that the exact reporting at issue in this case was not accurate and corrected it. *See Marchisio v. Carrington Mortg. Servs., LLC*, No. 14-14011-CIV, 2016 WL 10568065, at *14 (S.D. Fla. Sept. 13, 2016), on reconsideration in part, No. 14-14011-CIV, 2017 WL 5483260 (S.D. Fla. Jan. 5, 2017), and aff'd in part, rev'd in part and remanded, 919 F.3d 1288 (11th Cir. 2019)(As with the "reasonable investigation" element discussed above, it is a plaintiff's burden of proof to demonstrate "willfulness". The Plaintiffs meet this burden, and they are entitled to summary judgment in their favor. It is not

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

that the Defendant's violation was intentional, but it does rise to the level of recklessness. The extensive litigation history and the legal obligations that flowed therefrom heightened the need for correct reporting and heightened the need for careful investigation. The deficiencies in the Defendant's system allowed it to continue to report inaccurate information, even in response to a specific dispute, despite that litigation history.)

Plaintiff requests that the Court reject TU's argument that Plaintiff failed to plead willfulness properly, and deny TU's motion to dismiss in its entirety.

When arguing willfulness, Trans Union out right and intentionally miscited the *Levin* case. Trans Union miscited *Levin* and incorrectly argues that Plaintiff had to plead the elements of a willful claim. Levin didn't state that ruling at all. *Levin* was decided at the summary judgment stage and it stated that a consumer must prove the that the violation was intentional or reckless and with a risk of violating the law. It didn't say anything have to plead the elements in the complaint that Trans Union attempts to argue. Levine v. World Fin. Network Nat. Bank, 554 F.3d 1314, 1318 (11th Cir. 2009)(To prove a willful violation, a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act. *Safeco*, 127 S.Ct. at 2208. To prove a reckless violation, a consumer must establish that the action of the agency "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 2215.)

## VI.    **CONCLUSION**

Plaintiff respectfully requests the Court deny TU's Motion to Dismiss in its entirety. Plaintiff has met the pleading standards under Rule 8 and Rule 12 – Plaintiff has indeed set forth facts regarding TU's actions and inactions in this case which, if true, would entitled Plaintiff to relief against TU. Plaintiff's allegations are not speculative or conclusory, and all elements of the FCRA claims stated, including willfulness, have been properly and well-plead. Should the Court grant TU's Motion

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

to Dismiss, in whole or in part, Plaintiff respectfully requests leave to amend
Plaintiff's Complaint to cure any perceived deficiencies.


DATED: November 2, 2020          THE CARDOZA LAW CORPORATION

                                 BY: /s/ MICHAEL F. CARDOZA

                                 MICHAEL F. CARDOZA, ESQ.

                                 LAUREN B. VEGGIAN, ESQ

                                 ATTORNEYS FOR PLAINTIFF

## ATTESTATION AND CERTIFICATE OF SERVICE

I, Michael F. Cardoza, am the ECF user whose identification and password are being used to file this document and I hereby attest that all counsel whose electronic signatures appear within it were provided with their authority and concurrence.

I also hereby certify that on November 2, 2020, I electronically filed a true and correct copy of the foregoing Opposition to Defendant Trans Union, LLC's Motion to Dismiss for the United States District Court for the Central District of California using the CM/ECF system. I also certify that all participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.


**THE CARDOZA LAW CORPORATION**

DATED: November 2, 2020        BY: /s/ Michael F. Cardoza

Michael F. Cardoza, Esq.

Attorney for Plaintiff

Cynthia Soler