**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St. #80594
San Francisco, CA 94104
Telephone:   (415) 488-8041
Facsimile:    (415) 651-9700
*Attorneys for Plaintiff,*
Cynthia Soler

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CYNTHIA SOLER,** | Case No.: 2:20-cv-08459-DSF-PLA |
| Plaintiff, | *HON. DALE S. FISCHER* |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT TRANS UNION'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION** |
| **TRANS UNION, LLC, and** NELNET SERVICING, LLC, | |
| Defendants. | Complaint Filed: September 15, 2020 |
| | Date: January 25, 2020 Time: 1:30 pm Courtroom: 7D |

///

///

///

///

///

///

///

///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

PLAINTIFF'S OPPOSITION TO TRANS UNION'S MOTION FOR RECONSIDERATION

## **TABLE OF CONTENTS**

I.    ARGUMENT  ................................................................ 1

    A. Issue to be decided by this Court  ............................................ 1

    B. Standard of Inaccuracy and/or Misleading  ........................... 2

    C. Misleading is a Jury Issue  ............................................... 3

    D. Recent decisions that are directly on point and ruled in favor of Plaintiff's position  ............................................................ 4

    E. Expert Testimony  ............................................................ 6

    F. Trans Union's own documents prove that the Pay Status is the current status of the account; Not the historical status that they attempt to argue  .......................................................... 8

    G. Trans Union miscited "Settles v. Trans Union"  .................... 9

    H. Trans Union relies on cases that have been rejected in the Eastern District of California and "viewing the account in its entirety  ................................................................ 12

II.    CONCLUSION ................................................................ 16

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

*Allen v. Board of Public Educ. for Bibb County*,
495 F.3d 1306, 1315 (11th Cir. 2007) .............................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)................................................................................... 11

*Beseke v. Equifax Info. Servs. LLC*,
420 F. Supp. 3d 885, 891–92 (D. Minn. 2019), motion to certify appeal denied, No. CV 17-4971 (DWF/KMM), 2020 WL 133289 (D. Minn. Jan. 13, 2020)........ 4

*Dalton v. Capital Associated Indus., Inc.*,
257 F.3d 409, 415 (4th Cir. 2001) ................................................................. 3, 4

*Drew v. Equifax Information Services, LLC*,
690 F.3d 1100, 1108 (9th Cir. 2012) .......................................................... 4, 14

*Friedman v. CitiMortgage, Inc.*,
No. 18 CV 11173, 2019 WL 4194350, at *1, 3 (S.D.N.Y. Sept. 3, 2019) .*passim*

*Galea v. Wells Fargo Bank, N.A.*,
388 F. Supp. 3d 1212, 1216–17 (E.D. Cal. 2019) .................................... 4, 12, 13

*Gatanas v. Am. Honda Fin. Corp.*,
No. CV2007788KMJBC, 2020 WL 7137854, at *3–4 (D.N.J. Dec. 7, 2020)
.......................................................................................................................... 4, 5

*Gillespie v. Equifax Info. Servs. L.L.C.*,
484 F.3d 938, 941 (7th Cir. 2007) .................................................................... 2

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)................................................................ 2, 4, 14

*Huggins v. FedLoan Servicing, et al.*,
Case No. 22:19-cv-21731-ES-CLW (Judge Salas), Doc. No. 40 (December 2, 2020 Opinion) ............................................................................................................ 5

*Johnson v. Wells Fargo Home Mortg., Inc.*,
No. EDCV 13-01044-VAP, 2013 WL 7211905, at *8 (C.D. Cal. Sept. 13, 2013)
.......................................................................................................................... 2

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

*Koropoulos v. Credit Bureau, Inc.,*
734 F.2d 37, 40–42 (D.C. Cir. 1984) ............................................................. 3

*Larson v. Trans Union, LLC,*
No. 12-CV-05726-WHO, 2014 WL 1477705, at *3 (N.D. Cal. Apr. 14, 2014)
............................................................................................................. 2, 3, 14

*Macik v. JPMorgan Chase Bank, N.A.,*
No. CV G-14-044, 2015 WL 12999728, at *4 (S.D. Tex. May 28, 2015), report and
recommendation adopted sub nom. Macik v. Trans Union, LLC, No. 3:14-CV-
0044, 2015 WL 12999727 (S.D. Tex. July 31, 2015) ..............................*passim*

*Miller v. Trans Union, LLC,*
No. 12–cv–1715, 2013 WL 5442059, at *5 (M.D. Pa. Sept. 27, 2013) .......... 2

*Morgan v. Equifax Information Services, LLC,*
No. 15-cv-10640, 2017 WL 1150848, at *3 (N.D. Ill. March 28, 2017) ..... 4, 14

*Mund v. Transunion,*
No. 18-CV-6761(BMC), 2019 WL 955033, at *1 (E.D.N.Y. Feb. 27, 2019)5, 6

*Oates v. Wells Fargo Bank, N.A.,*
880 F. Supp. 2d 620, 626 (E.D. Pa. 2012)
................................................................................................................. 5

*Saunders v. Branch Banking & Trust Co.,*
526 F.3d 142, 148 (4th Cir. 2008) ................................................................. 3

*Schweitzer v. Equifax Info. Solutions LLC,*
441 Fed.Appx. 896, 902 (3d Cir. 2011) ...................................................... 3, 14

*Seamans v. Temple Univ.,*
744 F.3d 853 (3d Cir. 2014) ............................................................................ 4

*Seamans v. Temple Univ.,*
744 F.3d at 865; *Dalton*, 257 F.3d at 415.) .................................................. 4, 5

*Sepulvado vs. CSC Credit Services,*
158 F.3d 890, 895 (5ᵗʰ Cir. 1988) ................................................................. 2

iii

*Settles v. Trans Union, LLC,*
No. 3:20-CV-00084, 2020 WL 6900302, at *5 (M.D. Tenn. Nov. 24, 2020)
.................................................................................................................*passim*

# I.    **ARGUMENT**

Nelnet was the servicer of two student loans that Plaintiff co-signed for her daughter. The accounts were satisfied with Nelnet when they were closed and transferred to another servicer/lender. Even though the accounts were satisfied, closed and transferred, which resulted in a $0 balance, the defendants continued to report the account's pay status as 120 days past due date.

## A.    Issue to be decided by this Court

The issue to be decided is this if an account or accounts that have been satisfied, transferred and closed with Nelnet and reporting a $0 balance, nevertheless continue to report the pay status as past due, are those accounts, as reported, inaccurate or misleading enough that they could result in adverse credit decisions or a negative impression.

This Honorable Court should deny Trans Union's notice of motion for reconsideration for the following reasons:

a.    A determination if an account is misleading is a jury issue.

b.    There have been recent decisions that ruled in favor of Plaintiff's position and denied both Trans Union's and data furnisher's motion to dismiss.

c.    Plaintiff has submitted evidence that overwhelmingly supports Plaintiff's position that reporting the pay status as currently past due on an account with a $0 balance and is inaccurate and misleading to the point that it caused her damage.

d.    Trans Union's own documents define the Pay Status as the current status of the account.

e.    Trans Union has intentionally miscited and misrepresented the case law they rely on in an attempt to bolster a specious argument.

///

///

THE CARDOZA LAW CORPORATION
548 MARKET ST, #80594
SAN FRANCISCO, CA 94104

**B.    Standard of Inaccuracy and/or Misleading**

The Ninth Circuit ruled that an account is inaccurate if it is technically inaccurate or if it is misleading in such a way that it may be expected to adversely affect credit decisions. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) "a consumer report is inaccurate if it is "misleading in such a way and to such an extent that it may be expected to adversely affect credit decisions" (quoting *Sepulvado vs. CSC Credit Services*, 158 F.3d 890, 895 (5th Cir. 1988)).  It is interesting to note that the Ninth Circuit in *Gorman* didn't state that the account had to cause a credit denial, just that "it may be expected to adversely affect credit decisions".

This district expanded on Gorman and ruled that an account is inaccurate if it is so misleading that the statement is made in such a way that it creates a misleading impression. *Please see Johnson v. Wells Fargo Home Mortg., Inc.,* No. EDCV 13-01044-VAP, 2013 WL 7211905, at *8 (C.D. Cal. Sept. 13, 2013)(Although a report may be "technically accurate" in reflecting the consumer's failure to make payments on the loan, the report may still be inaccurate if the "statement is presented in such a way that it creates a misleading impression.".)

Other districts in California have followed Johnson's lead in determining what is "clearly and accurately.  *Please see Larson v. Trans Union, LLC,* No. 12-CV-05726-WHO, 2014 WL 1477705, at *3 (N.D. Cal. Apr. 14, 2014)(Courts have construed the words "clearly and accurately" and similar words in other sections of the FCRA to mean that a credit reporting agency has a duty to "do more than simply make an accurate disclosure of information in the consumer's credit file." *Gillespie v. Equifax Info. Servs. L.L.C.,* 484 F.3d 938, 941 (7th Cir. 2007) (interpreting section 1681g(a)). *See also Miller v. Trans Union, LLC,* No. 12–cv–1715, 2013 WL 5442059, at *5 (M.D. Pa. Sept. 27, 2013) ("Under section 1681g, Defendant has a duty to clearly and accurately set forth any OFAC information ... a disclosure may be accurate but may not be clear so that a consumer a consumer can determine the

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

accuracy of the information."); *Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409, 415 (4th Cir. 2001) (credit report is not accurate under FCRA sections 1681e and 1681k if it provides information in a manner that creates a materially misleading impression); *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40–42 (D.C. Cir. 1984) (incomplete reporting can violate FCRA section 1681e's accuracy requirement when it is "misleading"); *Schweitzer v. Equifax Info. Solutions LLC,* 441 Fed.Appx. 896, 902 (3d Cir. 2011) ("A consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.") (examining claim under section 1681e) (quoting *Saunders v. Branch Banking & Trust Co.,* 526 F.3d 142, 148 (4th Cir. 2008) (interpreting section1681s)).Applying this legal standard, and drawing all inferences in Larson's favor as I must at this procedural stage, I conclude that Larson has sufficiently pled that Trans Union's disclosure is misleading and inaccurate.).

The face of the reporting states, "Account: 120 Days Past Due", it does not state "*was* 120 days past due".  The plan language of the statement describes it in present tense, not past.  Trans Union's argument that it is only a historical status, when the reporting is clearly in present tense would at a minimum create two different meanings. *Please see Larson v. Trans Union, LLC,* No. 12-CV-05726-WHO, 2015 WL 3945052, at *10 (N.D. Cal. June 26, 2015)(Since the disclosure may be susceptible of these two meanings, the file disclosure "may be deemed 'inaccurate' since the statement is presented in such a way that it may create a misleading impression." *Schweitzer v. Equifax Info. Solutions LLC,* 441 Fed.Appx. 896, 902 (3d Cir.2011).

## C.    Misleading is a Jury Issue

The Eastern District of California ruled that a determination of whether account is misleading is better suited for a jury. That only makes sense because a Judge should not be put in a position of a hypothetical credit grantor. That is a fact

issue for a jury to determine. *Please see Galea v. Wells Fargo Bank, N.A.,* 388 F. Supp. 3d 1212, 1217 (E.D. Cal. 2019) (Rather, the inconsistency among district courts on this issue—and the narrow grounds upon which they attempt to distinguish themselves—reaffirms the notion that determining whether credit information is misleading is often a task better suited for a jury. See, e.g., *Drew v. Equifax Information Services, LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012); Gorman, 584 F.3d at 1163; *Morgan v. Equifax Information Services, LLC*, No. 15-cv-10640, 2017 WL 1150848, at *3 (N.D. Ill. March 28, 2017).

The Third Circuit has ruled as well that a determination of whether an account misleads creditors is a question for the jury. *please see Seamans v. Temple Univ.,* 744 F.3d 853 (3d Cir. 2014)(Whether technically accurate information was misleading in such a way and to such an extent that it can be expected to have an adverse effect generally is a question to be submitted to the jury, on a claim under the FCRA contesting the reasonableness of an investigation. Fair Credit Reporting Act, §§ 607(b), 623(b), 15 U.S.C.A. §§ 1681e(b), 1681s–2(b).); *please also see Beseke v. Equifax Info. Servs. LLC,* 420 F. Supp. 3d 885, 891–92 (D. Minn. 2019), <u>motion to certify appeal denied,</u> No. CV 17-4971 (DWF/KMM), 2020 WL 133289 (D. Minn. Jan. 13, 2020)(Whether technically accurate information is sufficiently misleading to qualify as inaccurate for the *892 purposes of the FCRA is generally a question to be submitted to the jury. *See, e.g.*, *Seamans*, 744 F.3d at 865; *Dalton*, 257 F.3d at 415.)

**D.    Recent decisions that are directly on point and ruled in favor of Plaintiff's position**

There have been very recent decisions that have ruled in Plaintiff's position, denying defendant's motion to dismiss.

i.    *Gatanas v. Am. Honda Fin. Corp.,* No. CV2007788KMJBC, 2020 WL 7137854, at *3–4 (D.N.J. Dec. 7, 2020) (Both the first and second

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

theories turn on whether Honda's reporting was inaccurate. That is, Gatanas alleges that "[h]ad [Honda] conducted a reasonable investigation, [Honda] would have determined that an account with a '$0' balance could not be late and past due." Gatanas provides no further details on how the investigation was unreasonable; instead, his theory is that maintaining the inaccurate reporting is *ipso facto* proof that Honda did not conduct the underlying investigation or correct the inaccuracy, as required by FCRA. Courts have recognized that pleading that an investigation was unreasonable because inaccurate information remained on a credit report after complaints is sufficient at this early stage. *See, e.g.*, *Friedman v. CitiMortgage, Inc.*, No. 18 CV 11173, 2019 WL 4194350, at *1, 3 (S.D.N.Y. Sept. 3, 2019); *Oates v. Wells Fargo Bank, N.A.*, 880 F. Supp. 2d 620, 626 (E.D. Pa. 2012). Recognizing this, Honda moves to dismiss on the ground that the report of a $0 balance along with a late-payment notation was in fact accurate. Even "technically correct" information, however, can be inaccurate if "it creates a materially misleading impression," and—critically here— "[w]hether technically accurate information was misleading ... is generally a question to be submitted to the jury." *Seamans*, 744 F.3d at 865 (internal citations, quotation marks, and alterations omitted). **Accordingly, in a case applying that standard to near-identical facts, a court held that reporting a $0 balance along with a late-payment notation could mislead future lenders reading a consumer's credit report to perceive the consumer as currently delinquent. *Friedman*, 2019 WL 4194350, at *3. *4 So too here.**).

ii. *Huggins v. FedLoan Servicing, et al.*, Case No. 22:19-cv-21731-ES-CLW (Judge Salas), Doc. No. 40 (December 2, 2020 Opinion) (Like the plaintiff in *Mund* and similar to the plaintiff in *Friedman*, Huggins pleads that FedLoan reported that he had a $0 balance and a pay status of 120 days delinquent. **Liberally construing those allegations, and drawing all reasonable inferences in favor of Huggins, the Court finds that such reporting paints a materially misleading picture of Huggins's pay status in that it may lead potential lenders to believe Huggins is currently late on his payments.**).

In addition to the very recent rulings in Plaintiff's favor, there have been multiple other rulings that are directly on point that the *Gantanas* and *Huggins*' Courts rely on in reaching their decisions.

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

i. *Friedman v. CitiMortgage, Inc.,* No. 18 CV 11173 (VB), 2019 WL 4194350, at \*3 (S.D.N.Y. Sept. 3, 2019) Here, plaintiff sufficiently alleges the trade line on his credit report is misleading in a way that could adversely affect lenders' credit decisions. According to plaintiff, because CitiMortgage continues to report that plaintiff owes a balance—even if that balance is $0—and reports that balance as 120 days late, lenders believe plaintiff is currently delinquent, negatively affecting potential lenders' perception of plaintiff's creditworthiness.

ii. *Mund v. Transunion,* No. 18-CV-6761(BMC), 2019 WL 955033, at \*1 (E.D.N.Y. Feb. 27, 2019). The Mund case was identical to the present case, down to the fact that both accounts were transferred and closed but continued to report the pay status as past due on an account with a $0 balance, which damaged the Plaintiff's credit. In Mund, "plaintiff wrote Transunion another dispute letter: **"This account is reporting the wrong status. It states that the account is currently past due. This is not correct, it cannot currently be late. The balance clearly shows $0. Further, I think the account was transferred which also means it's impossible for it to be currently late with this creditor**. This is hurting my credit."). The Mund Court ruled in favor of the Plaintiff and denied their motion to dismiss. *Please see Mund v. Transunion,* No. 18-CV-6761(BMC), 2019 WL 955033, at \*3 (E.D.N.Y. Feb. 27, 2019)(Plaintiff alleges that if a creditor believed, based on the credit report, that plaintiff's account was currently reporting late, then the creditor might consider plaintiff a higher credit risk and adjust its lending decisions accordingly. Assumed to be true and construed in the light most favorable to her, plaintiff has alleged enough harm to state a claim under the FCRA. See Kilpakis, 229 F. Supp. 3d at 142 ("In fact, at least according to the [complaint], this information could, and did adversely impact the [p]laintiff's credit rating and access to a home mortgage. In the Court's view, this is sufficient to pass Rule 12(b)(6) muster.") (internal citations omitted).].

**E.    Expert Testimony**

i. Alex King is not only a mortgage broker but is also a credit grantor. He testified at the *Macik* trial and explained that the pay status represents the "current status" of the account. He explained that *Macik* even was denied a home mortgage because the pay status showed that she was "currently

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

90 days late" on an account that was actually satisfied four years earlier. As Mr. King's declaration states, "Because the "pay status" data field works independently of the other data fields and can be the sole cause of credit denial, even when viewed in its entirety, it is critical that it is reported with maximum accuracy. The inaccuracy of the reporting is very clear on the face of the report when a satisfied account ($0 balance) reports as, "Pay Status:  Account 120 days past due date".  The plain reading of the report tells me that when it reports, "Pay Status:  Account 120 days past due date", it is reporting that the account is currently owed and late and will continue to be late until payments are made to get it in good standing, which is impossible to do considering there is a $0 balance.  It is non-sensical at best.  In addition to my own opinions, I know lenders that will deny loans based on the Pay Status reporting as past due, even with a $0 balance, because of what the Pay Status data field truly represents, that it is "past due today" to the lender that is reporting the account"………

"As a credit grantor I can testify that it has been and will continue to be very confusing to credit grantors as to the true status of the account. Even though an account has a $0 balance, a Pay Status that reports as, "Pay Status:  Account 120 days past due date" will be viewed and treated as if the account is currently past due today and will be a reason that a consumer is denied credit."  Mr. King's testimony validates the Plaintiff's allegation that she was unable to refinance her home from a very high 6.25% because of the problems that these accounts has caused her, "It is in my opinion that the account at issue in this case is being reported inaccurately and is causing her substantial problems in any attempt to re-finance her home.  In addition to being inaccurate, it is also my opinion that it is misleading is an understatement that has and will cause credit denials." *Please see* Exhibit A.

ii. Evan Hendricks is a leading FCRA expert in the Country and has testified at Congressional hearings on multiple times on relevant FCRA issues. He was another expert in the *Macik* case that testified as to the inaccuracy of reporting an account with a $0 balance but with a past due pay status. His declaration is attached to discuss the inaccuracy of the account at issue in this litigation, "The correct reporting for that data field is "closed" not the 120 days past due that is currently being reported. I have seen first-hand that credit grantors can and will determine that the account is owed and past due, even if the amount is for $0. The actual amount that is past due does not mitigate the fact that creditors flag the account for being currently past due." *Please see* Exhibit B.

**F.**  **Trans Union's own documents prove that the Pay Status is the current status of the account; Not the historical status that they attempt to argue**

It is hard to believe that Trans Union would argue and misrepresent to this Honorable Court that the "Pay Status" is the historical status of the account when they know that their own documents contradict the core of their argument in this case. The hypocrisy of Trans Union's position is striking. For, when the Plaintiff initially disputed the two accounts, Trans Union mailed their "dispute results" to Plaintiff. There, in black and white, on page two of Trans Union's own document is a list of definitions which clearly define the "Pay Status" as "The current status of the account; how you are currently paying". Trans Union cannot deny their own statement as attached below. Not only is Trans Union's position in contradiction to their own documentation, it is a thorough repudiation of Trans Union's argument in the instant case and prima facie evidence of Trans Union's intent to mislead this honorable Court.

///

///

**Definitions**

For your reference, here are some definitions to help you understand **Your Investigation Results.**

**For ACCOUNTS:**

| | |
|---|---|
| **Balance:** The balance owed as of the date the account was verified or reported | **Original Charge Off:** If applicable, the amount charged off due to non-payment of the account |
| **Credit Limit:** The maximum amount of credit approved by the creditor on the account | **Past Due:** The amount past due as of the date the account was verified or reported |
| **Date Opened:** The date the account was Opened | **Pay Status:** The current status of the account; how you are currently paying |
| **High Balance:** The highest amount ever owed on an account | **Remarks:** If applicable, the creditor may provide additional information here related to the account |
| **Last Payment Made:** The date the creditor received the last payment on the account | **Responsibility:** The type of contractual ownership (individual, joint, authorized user, etc.) of the account |
| **Maximum Delinquency:** If applicable, the maximum amount past due before an account becomes a charge-off or a collection account | **Terms:** The monthly payment amount or monthly minimum payment due on the account |

In the "Order" that was issued in favor of the Plaintiff, the Court stated that the Parties disagree whether the Pay Status is a current or historical status of the account. Trans Union's own documents prove Trans Union knew that what they were arguing was not correct. Trans Union's own definition of "Pay Status" actually agrees with Plaintiff that the Pay Status is actually the current status of the account. Trans Union should be estopped from claiming differently and Trans Union's motion to reconsider should be denied.

**G.    Trans Union miscited "*Settles v. Trans Union*"**

Trans Union relies heavily on a case that actually validates the *Friedman* and *Macik* cases. Trans Union paints an argument that does not exist. The *Settles* case did not rule what Trans Union is attempting to pass off to this Honorable Court, not even close. The Settles' facts were different, and the ruling highlights the difference which will be discussed further below.

The *Settles'* ruling supports *Friedman*, and it is critical to note that both in *Friedman* as well as in this case, the accounts were closed and transferred to another servicer/lender but continued to report a pay status that was past due after the account was closed, with a $0 balance. These issues are literally identical.

///

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

Contrary to Trans Union's misleading argument, the *Settles'* Court cited Friedman and validated its ruling and distinguished it from Settles' facts because in Friedman, the account "was transferred to another lender and he had no further payment obligations to Citibank". *Please see Settles v. Trans Union, LLC*, No. 3:20-CV-00084, 2020 WL 6900302, at *5 (M.D. Tenn. Nov. 24, 2020) (**Plaintiff also cites *Friedman v. CitiMortgage, Inc.*, No. 18-cv-11173, 2019 WL 4194350 (S.D.N.Y. Sept. 3, 2019), which the court found to have stated a claim under the FCRA. Like *Macik*, *Friedman* does not involve a defaulted loan account. In *Friedman*, the plaintiff's mortgage account with Citibank was transferred to another lender and he had no further payment obligations to Citibank.).**

*Settles* ruling also completely validates the *Macik* case and even states that her report was inaccurate. *Please see Settles v. Trans Union, LLC*, No. 3:20-CV-00084, 2020 WL 6900302, at *5 (M.D. Tenn. Nov. 24, 2020) (Unlike the circumstances in this case, the *Macik* plaintiff paid the loan in full before the account was closed. Accordingly, <u>a report that was misleading in *Macik*</u>, is not necessarily misleading here where Plaintiff did not pay his loan in full – he defaulted.).

As to the *Hernandez* order, which involved a short sale of a mortgage, the ruling should not be considered for multiple reasons, including but not limited to, the judge admitted that he would not consider any of the rulings in Plaintiff's favor. Since there are more rulings in favor of Plaintiff's position, the judge only considered the minority view, "by looking closer to home in cases decided by and within the Eleventh Circuit". Please see Dkt. No. 28-2 at p.2 at fn.2 ("In addition to the foregoing, the parties have filed myriad notices of supplemental authority and responses to the notices (docs. 52, 70, 74, 75, 76, 77, 78, 79, 80, 81). Most of these supplemental filings concern decisions by other district courts throughout the country. With the exception of one of these out-of-circuit district court cases, *Settles v. Trans Union LLC*, 2020 WL 6900302 (M.D.Tenn. Nov. 24, 2020), and the cases

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

1  cited therein infra, the pending motions will be disposed of by looking closer to
2  home in cases decided by and within the Eleventh Circuit."). The irony within the
3  judge's order is that he contradicted the cases that he cited to justify his ruling. The
4  judge stated that a summary judgment is inappropriate if a factfinder evaluating the
5  evidence could draw more than one inference, and in the same breath he stated that
6  there were a lot of other Federal Judges that could draw more than one inference
7  based on ruling in favor of Plaintiff's position but just decided to ignore them. Not
8  only could a factfinder draw more than one inference, but Federal Judges have
9  drawn more than one inference. Please see Dkt. No. 26-2 at p.3-4. ("Summary
10 judgment is inappropriate "[i]f a reasonable factfinder evaluating the evidence
11 could draw more than one inference from the facts, and if that inference introduces
12 a genuine issue of material fact[.]" *Allen v. Board of Public Educ. for Bibb County*,
13 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is "material" if it might affect
14 the outcome of the case under the governing law. *Anderson v. Liberty LobbyInc.*,
15 477 U.S. 242, 248 (1986). It is "genuine" if the record, viewed as a whole, could
16 lead a reasonable fact finder to return a verdict for the non-movant. Id"). In addition
17 to contradicting his own cited authorities, the judge in *Hernandez* also stayed
18 discovery very early in the case but still granted summary judgment. If the judge
19 would have allowed for discovery, it would have been discovered that the guide that
20 Trans Union co-authored and relies on states that the correct reporting for a short
21 sale would be "paid/closed" and not the 120 days past due. Hernandez's attorney
22 will be filing a motion for reconsideration based on the judge not allowing discovery
23 and not following his own cited authorities. The attorney that argued Hernandez
24 also will be filing a pro hac vice in this case.
25 ///
26 ///
27 ///
28 ///

THE CARDOZA LAW CORPORATION
548 MARKET ST, #80594
SAN FRANCISCO, CA 94104

**H.      Trans Union relies on cases that have been rejected in the Eastern District of California and "viewing the account in its entirety"**

Trans Union recycles arguments that have been rejected in California District Courts. Trans Union relies on *Cahlin* and *Meeks*. Both have been rejected in the Eastern District of California. The E.D. Cal. Court noted that they are not bound by them.  This is noteworthy because *Cahlin* also relates to the Pay Status data field. Nevertheless, the E.D. Cal. ruled against *Cahlin* and stated an analogous argument that Plaintiff is making in this case, that the I9 rating that *Cahlin* refers to is a Pay Status rating, and that a jury *could* determine it misleading.  Plaintiff isn't alleging that any and all negative historical information cannot be reported, rather that the Pay Status, which represents the current status should be reported correctly, as closed.

*Please see Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1216–17 (E.D. Cal. 2019):

> (For example, in Cahlin, 936 F.2d at 1154, a plaintiff defaulted on a lease with General Motors. Following the default, the plaintiff's credit report included an "I9" rating on his General Motors account, indicating the account had been "charged off" or was a bad debt. Id. at 1154-55. The plaintiff eventually settled the account. Id. at 1155. The account retained its I9 rating but showed a balance of zero. Id. at 1159. Plaintiff sued, arguing it was incorrect for the credit reporting agency to continue reporting his charge off after he settled the account. Id. at 1155. The Eleventh Circuit disagreed, finding there was nothing incorrect about including derogatory references on a credit report to reflect an account had been charged and settled for less than the original amount. Id. at 1158.

> Cahlin, however, is not persuasive authority for this case. Unlike the plaintiff in Cahlin, Galea does not contend her credit report should be without any derogatory references that may accurately reflect her credit history. Indeed, Galea's challenge is not with the inclusion of historical information, but rather, the absence of any clear indication that her "scheduled monthly payment amount" is, in fact, historical. See Opp'n at 6-7. Furthermore, the plaintiff in Cahlin, 936 F.2d at 1158

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

only argued that his report was patently incorrect. Because he did not argue the report was misleading, the court never addressed that issue. Id.Meeks, 2019 WL 1856411, at *5 is Equifax's closest analog. There, the disputed credit report listed the "Terms" of the plaintiff's debt ("$613 per month, paid Monthly for 76 months") even though plaintiff had charged off the debt and closed the account. Id. Upon viewing the tradeline as a whole, the Northern District of Georgia found the report "undeniabl[y]" showed "that there exist[ed] no ongoing obligation for payment." Id. at *6. Because the account was "clearly reported as closed, charged off, ... and with a $0 balance", the "mere presence of historical monthly payment terms neither cause[d] confusion nor create[d] an inaccuracy." Id. Similarly, in *Harris v. Nissan-Infiniti LT*, No. 2:17-cv-00191-JCM-VCF, 2018 WL 2741040, at *4 (D. Nev. 2018), the District of Nevada found that including a balloon payment term on an account discharged through bankruptcy was not materially misleading where the phrase "[d]ischarged through bankruptcy chapter 7" preceded the disputed payment amount. *Harris v. Nissan-Infiniti LT*, 2018 WL 2741040, at *1, 4.

But Galea cites an equally comparable case arising out of the Northern District of Illinois. Opp'n at 7 (citing *Freedom v. Citifinancial, LLC*, No. 15-cv-10135, 2016 WL 4060510 (N.D. Ill. July 25, 2016)). In Freedom, 2016 WL 4060510, at *6, the plaintiff's credit report listed a "scheduled payment" of $143 even though he'd successfully discharged his debt through bankruptcy. The Court found that reporting a "scheduled payment amount," even if historically accurate, "could create the mistaken impression that Plaintiff still owed on the account." Id. If anything, Freedom is more similar to the case at hand than Meeks. The Freedom, 2016 WL 4060510, at *6 credit report, like the one here, labeled its "historical payment" category "Scheduled Payment Amount"—a phrasing that more intuitively suggests an ongoing payment obligation than the word *1217 "Terms." See Meeks, 2019 WL 1856411, at *5.

The Court is not bound by any of these cases cited in Equifax's motion. Nor is it persuaded that those cases require this Court to dismiss Galea's Section 1681e(b) and Section 1681i(a) claims. Rather, the inconsistency among district courts on this issue—and the narrow grounds upon which they attempt to distinguish themselves—reaffirms the notion that determining whether credit information is

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

misleading is often a task better suited for a jury. See, e.g., *Drew v. Equifax Information Services, LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012); Gorman, 584 F.3d at 1163; *Morgan v. Equifax Information Services, LLC*, No. 15-cv-10640, 2017 WL 1150848, at *3 (N.D. Ill. March 28, 2017).

This Circuit has not adopted the "viewing the entirety of the account" position that Trans Union has attempted to argue. In fact, the cases Trans Union cite to further their argument have been rejected by district courts in this circuit.

However, even if this court or circuit were to adopt the "viewing the entirety of the account" position, it would only benefit Plaintiff's argument. Trans Union's argument that a credit grantor would not be misled when viewing the account in its entirety is incredibly subjective and by definition a jury issue. Federal judges are not qualified and cannot determine if a credit grantor would be misled when looking at Plaintiff's accounts. As cited above, if the accounts are susceptible to two or more meanings, it may create a misleading impression. *Please see Larson v. Trans Union, LLC,* No. 12-CV-05726-WHO, 2015 WL 3945052, at *10 (N.D. Cal. June 26, 2015)(Since the disclosure may be susceptible of these two meanings, the file disclosure "may be deemed 'inaccurate' since the statement is presented in such a way that it may create a misleading impression." *Schweitzer v. Equifax Info. Solutions LLC,* 441 Fed.Appx. 896, 902 (3d Cir.2011). Plaintiff has provided evidence that a credit grantor would be misled with Mr. King's declaration. He is an actual credit grantor and is testifying that credit grantors would be misled. In addition to Mr. King, Macik was a consumer that was denied a home mortgage and the sole reason for her denial was because the pay status was reporting as 90 days past due date when the account was paid in full four years prior. The inaccuracy is a pay status that is reporting as past due on an account that has a $0 balance, it does not matter if the account was transferred, paid or any other reason, it is technically inaccurate as well as misleading on the face of the tradeline reporting. The jury

ruled in favor of Macik and determined that it was a willful violation of the FCRA.
Prior to the jury verdict, Chase filed a motion for summary judgment and the judge
was very clear that the pay status was a current status and not the historical status
that Chase unsuccessfully argued. *Please see Macik v. JPMorgan Chase Bank,
N.A.,* No. CV G-14-044, 2015 WL 12999728, at *4 (S.D. Tex. May 28, 2015),
report and recommendation adopted sub nom. *Macik v. Trans Union, LLC*, No.
3:14-CV-0044, 2015 WL 12999727 (S.D. Tex. July 31, 2015)(Problematically, for
Chase, its own evidence appears to contradict its position. (Dkt. No. 76, Ex. B). As
set forth in the four pages of Guidelines submitted by Chase, "The Account Status"
represents the name of a field that "[c]ontains the status code that properly identifies
the *current* condition of the account as of the Date of Account Information."
[Emphasis added]. (*Id.*). The Guidelines also reflect that the "The Payment Rating"
field is merely a *subset* of "The Account Status" that is only utilized in reporting
"[w]hen the Account Status" field contains specified codes (*e.g.*, "Code 13"[12])" or,
in the absence of one of the specified codes being used, the field is "blank filled."
(*Id.* at TU 368, 470). Thus, considering this evidence in a light most favorable to
Macik as the non-moving party, a reasonable jury might very well conclude that
Chase was, in fact, responsible for Macik's account being reflected as "currently"
90 days past due **in 2013** when the lender ran her credit report.

Plaintiff is also attaching her declaration that she contacted five mortgage
officers to refinance her 6.25% mortgage but was informed that her school loans
appear currently late.  She was told that it would be a waste of time to apply for her
refinancing at that time.   This issue caused her problems with purchasing a car as
well. *Please see* Exhibit C.

Unlike Trans Union, Plaintiff can show evidence that the pay status is the
current status of the account and that not only could it mislead creditors, but it has
and will continue to misled creditors until it is corrected.  The import of this cannot
be overstated. Trans Union's own definition of the "Pay Status" field, as represented

to Plaintiff in Trans Union's investigation results is '"Pay Status:  The **current** status of the account; how you are currently paying."'. Given this fact, Trans Union's argument about the meaning of "Pay Status" is impossibly at odds with Trans Union's own definition of the term.

Plaintiff requests that the Court reject TU's argument that, when viewed in their entirety, the accounts reporting 120 days late, is not misleading and deny TU's motion to dismiss in its entirety.

## II.    <u>CONCLUSION</u>

Plaintiff has provided evidence that in addition to the accounts being inaccurate, they have also misled credit grantors, which has caused her harm. Plaintiff respectfully requests the Court deny TU's Motion to reconsider in its entirety. Plaintiff has met the pleading standards under Rule 8 and Rule 12 – Plaintiff has indeed set forth facts regarding TU's actions and inactions in this case which, if true, would entitle Plaintiff to relief against TU. Plaintiff's allegations are not speculative or conclusory, and all elements of the FCRA claims stated, including willfulness, have been properly and well-plead. Should the Court grant TU's Motion to Dismiss, in whole or in part, Plaintiff respectfully requests leave to amend Plaintiff's Complaint to cure any perceived deficiencies.

**THE CARDOZA LAW CORPORATION**

DATED: January 4, 2021    BY: /S/ MICHAEL F. CARDOZA
MICHAEL F. CARDOZA, ESQ.
LAUREN B. VEGGIAN, ESQ.
ATTORNEYS FOR PLAINTIFF,
CYNTHIA SOLER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Michael F. Cardoza, am the ECF user whose identification and password are being used to file this document and I hereby attest that all counsel whose electronic signatures appear within it provided their authority and concurrence.

I also hereby certify that on January 4, 2021, I electronically filed a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT TRANS UNION'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION with the Clerk of the Court for the United States District Court of California for the Central District using the CM/ECF system. I also certify that all participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

DATED: January 4, 2021

**THE CARDOZA LAW CORPORATION**
BY: /s/ MICHAEL F. CARDOZA
MICHAEL F. CARDOZA, ESQ.
ATTORNEY FOR PLAINTIFF,
CYNTHIA SOLER

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

CERTIFICATE OF SERVICE