Kristin L. Marker
State Bar No. 278596
kmarker@qslwm.com
Paul W. Sheldon (Pro Hac Vice)
Texas Bar No. 18191480
psheldon@qslwm.com
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
6900 Dallas Parkway, Suite 800
Plano, TX 75024
Telephone: (214) 560-5442
Facsimile: (214) 871-2111
**Counsel for Trans Union LLC**

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SOLER,<br><br>                  Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC AND NELNET SERVICING, LLC,<br><br>                  Defendants. | Case No. 2:20-cv-08459-DSF-PLA<br><br>Honorable Dale S. Fischer<br><br>**DEFENDANT TRANS UNION LLC'S MOTION IN LIMINE NO. 1:**<br><br>**TO EXCLUDE TESTIMONY OF EVAN HENDRICKS REGARDING THIRD PARTY INTERPRETATION OF PLAINTIFF'S CREDIT REPORTS**<br><br>Final Pre-Trial Conference: May 9, 2022, 3:00 p.m.<br>Trial: June 7, 2022, 8:30 a.m. |

TO THE HONORABLE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that on May 9, 2022, or as soon thereafter as can be heard in Courtroom 7D of the United States District Court for the Central District, Defendant Trans Union LLC ("Trans Union") will move in limine pursuant to FED.

1

R. EVID. 401-403, for an order precluding Plaintiff's expert Evan Hendricks ("Hendricks") from providing opinion testimony pertaining to third party interpretation (i.e. lenders and underwriters) of Plaintiff's credit reports containing the Nelnet account. This motion is made following the meet and confer requirement noted in the Court's December 14, 2020 Order Re Jury Trial.

Trans Union's Motion in Limine is based on this Notice, the attached Memorandum of Points and Authorities, the papers and records on file herein, and on such oral and documentary evidence as may be presented at the hearing on this matter.

Dated: April 18, 2022        QUILLING, SELANDER, LOWNDS,
                             WINSLETT & MOSER, P.C.


                             By: */s/ Kristin L. Marker*
                                 Kristin L. Marker
                                 Counsel for Trans Union LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Cynthia Soler ("Plaintiff" or "Soler") claims Trans Union, LLC ("Trans Union") negligently and willfully violated the Fair Credit Reporting Act by reporting and verifying allegedly inaccurate or misleading information regarding the "pay status" of two Nelnet accounts on her credit report. Plaintiff has retained a purported expert, Evan Hendricks ("Hendricks"), to offer opinions at trial – some of which should be excluded. Specifically, Hendricks intends to offer opinion testimony regarding the interpretation of the credit reporting of the Nelnet accounts by third parties such as lenders and underwriters. Such opinion testimony should be precluded because (1) there is no evidence that any lender and/or underwriter reviewed Plaintiff's credit report; (2) Hendricks' opinions as to how third-party companies might choose to review, interpret, and decipher the raw Nelnet account data has no bearing on the accuracy of the Trans Union credit report itself, and is therefore not relevant, prejudicial, and will confuse the jury if allowed; and (3) Hendricks is not qualified to opine regarding the way a prospective lender or underwriter would view or interpret the raw data provided in credit reports by Trans Union.

## II. ARGUMENT

**A. Ms. Soler's Trans Union Credit Report was Never Reviewed by a Lender and/or Underwriter.**

Hendricks conceded that the Plaintiff has no regular inquiries on her file, and therefore cannot support her claim for any loan or credit denial:

Q: You understand there are no loan denials in this case attributed to a Trans Union credit report that are at issue; correct?

A: Right. In terms of—right, but she didn't apply so there could not have been a denial.

3

1  Q: No credit application denials in this case based on a Trans Union review
2  credit report; correct?
3  A: I think same answer. There's no—there was no application she was
4  dissuaded from applying, so there's no denial.
5  Hendricks Depo. 93:6-17.
6  Q: … And with regards to hard inquiries or regular inquiries, you don't see
7  any on this particular credit disclosure, do you?
8  A: That's correct, I do not see any hard inquiries.
9  Hendricks Depo. 99:11-15.
10 Because Plaintiff has no evidence of a lender and/or underwriter pulling
11 Plaintiff's credit report for review (i.e. a regular (or "hard") inquiry), Hendricks
12 should not be allowed to offer opinion testimony regarding his hypothetical
13 interpretation of an instance that never occurred in this case - the furnishing of a
14 Trans Union credit report to a lender and/or underwriter. Without proof of a regular
15 inquiry, Plaintiff cannot prove a denial of credit. *See, e.g., Burns v. Bank of*
16 *America*, 655 F.Supp.2d 240, 251 (S.D. N.Y. Dec. 4, 2008) (granting summary
17 judgment in favor of defendant because "Trans Union received no hard inquiries
18 from any mortgage lenders in connection with an application for a loan for
19 [plaintiff]" so plaintiffs "failed to show that the disputed information caused the
20 alleged credit denial") (internal marks omitted); *Johnson v. Equifax, Inc.*, 510
21 F.Supp.2d 628, 647 (S.D. Ala. May 31, 2007) ("[plaintiff] has proffered no evidence
22 and has admitted she has no proof that [creditor] relied on a Trans Union report to
23 deny her a loan . . . In contrast, Trans Union's (sic.) has proffered evidence that it
24 never furnished Plaintiff's Trans Union consumer report to [subscriber]. . .
25 Consequently, even assuming [plaintiff] was denied a loan by [creditor], she has
26 failed to establish that her 'injury' (the denial) was caused by a Trans Union
27 consumer report furnished to a third party.") Because there are no regular inquiries
28

showing a Trans Union credit report was furnished to a lender and/or underwriter, any references to how a lender and/or underwriter would interpret such credit report would be highly prejudicial, confusing, and misleading to the jury.

Additionally, to the extent Plaintiff and Plaintiff's counsel attempt to represent to the jury that any "promotional inquiries" represented a review of Plaintiff's credit report by a lender and/or underwriter, Hendricks made it clear that such "promotional inquiries" merely meant that an entity only received a consumer's name and address, not a credit report. Hendricks Depo. 102:23-25; 103:1-5.

**B. How Third Parties Choose to Review, Interpret, and Decipher the Raw Nelnet Account Data Has No Bearing on the Accuracy of the Credit Report Itself**

Inaccurate or misleading reporting is a required element of Plaintiff's claims under the FCRA. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010). Plaintiff's contention in this case is that Trans Union's reporting of a 120 days past due Pay Status on the Accounts could somehow mislead a creditor to believe that Plaintiff has a current late obligation on the Accounts, even though Trans Union's reporting shows that the Accounts are closed and have $0 balances. *See* Complaint, Doc. No. 1, ¶ 23.

As noted above, although there is no evidence of a regular ("hard") inquiry showing a review of Plaintiff's credit report by a lender and/or underwriter, even if there was, Hendricks' expected testimony as to how a third party might hypothetically choose to review, interpret, or decipher the raw Nelnet account data through algorithms or some other third-party methodology, such expected testimony has no bearing on the accuracy of the report itself. *See O'Neal v. Equifax Info. Servs., LLC, et al.,* No. 21-cv-80968-RAR, 2021 WL 4989943, at *4 (S.D. Fla. Oct. 27, 2021) ("How third party companies choose to utilize algorithms to decipher the accurate information reported by Defendant has no bearing on the accuracy of the

report itself.") *See also Pineda v. Trans Union LLC.,* No. 2:21-cv-653-SPC-MRM, 2021 WL 5798282, at *3 (M.D. Fla. Dec. 7, 2021) (quoting *O'Neal* stating "Moreover, Congress is the branch that can amend the FCRA in response to technological advances, not this Court."). The Ninth Circuit has held that even where a creditor misunderstood a credit reporting agency's data (*e.g.*, to misconstrue certain mortgage short sales as foreclosures), there is no inaccuracy and thus no liability. *Shaw v. Experian Info. Solns, Inc.*, 891 F.3d 749, 756-57 (9th Cir. 2018) (affirming summary judgment for Experian where the consumer was denied credit because the codes Experian used to report plaintiff's account were misunderstood by the Desktop Underwriter program used by the mortgage underwriter).

Accordingly, Hendricks' expected testimony regarding how a hypothetical third party lender or mortgage underwriter would review, interpret, or decipher the raw Nelnet account data through algorithms or some other methodology (which never happened), clearly has no bearing on the accuracy of Plaintiff's credit report itself and will only serve to prejudice, confuse, and mislead the jury. FED. R. EVID. 403.

### C. Hendricks is not Qualified to Opine on How Third Parties Would Interpret the Raw Data Provided in Credit Reports

Expert witness testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issues, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. The admissibility of an expert's testimony is governed by Rule 104(a) and the proponent of the testimony bears the burden to prove admissibility

6

by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Although no prospective lender or underwriter reviewed Plaintiff's credit report, Hendricks is not qualified to opine regarding the way a prospective lender or mortgage underwriter would view or interpret the raw data (i.e. credit reporting Metro-2 codes furnished to third-parties) provided in credit reports by credit reporting agencies such as Trans Union. Hendricks has no experience working as a lender or an underwriter. Hendricks Depo. at 23:15-17. For the past twenty (20) years, he primarily has been employed as an expert witness, and 100% of his professional income has come from expert witness work. *See* Hendricks Depo. at 31:3-5. Hendricks has never worked in the credit reporting industry but rather, has effectively created a cottage industry for consulting and testifying on behalf of plaintiffs in cases brought under the FCRA. *See* Hendricks Depo. at 31:3-5.

Despite this admitted lack of expertise as a lender or a mortgage underwriter, Hendricks attempts to provide opinions regarding what he believes creditors/lenders and mortgage underwriters perceive when they view raw data regarding accounts which are closed and transferred, and reported with a balance of $0 and a closed date due to transfer. The basis of his opinions is solely his experience testifying as an expert in a different lawsuit with reliance on Plaintiff's hearsay deposition testimony. *See* Depo. 46:20-25; 47:1, 15-19. Hendricks opines regarding how accounts hypothetically appear "on the—all of the tri-merge reports when someone applies for a refinance or a mortgage," yet fully admits he was never given, nor did he review, a tri-merge report regarding Plaintiff in this case. Hendricks Depo. 46:2-12; 47:2-5; 48:1-4; 114:7-14.

Lastly, as clear evidence of his lack of qualification to testify as to how a lender or a mortgage underwriter would understand raw data regarding Plaintiff's accounts that were closed and transferred, Hendricks erroneously claimed that Trans

1  Union had only one definition of "pay status," and that it was the "current" status of
2  the account. Hendricks Depo. 48:10-20.  Hendricks was unaware that for accounts
3  that are closed and transferred like Plaintiff's, Trans Union's stated definition for
4  "pay status" is "the last known status of the account."  Hendricks Depo. 113:4-22.
5  Hendricks was unaware that Trans Union defines "pay status" differently between
6  accounts that are open and current versus those like Plaintiff's that are closed and
7  transferred.  His lack of knowledge regarding this and reliance on this incorrect fact
8  should preclude his opinion that a lender or a mortgage underwriter would view the
9  raw data as reflecting the "current" status of the account. *Ohio Valley Energy*
10 *Systems Corp. v. DL Resources, Inc.*, 2017 WL 11449697, at *1 (W.D. Penn. Mar.
11 21, 2017) ("Certainly nothing in Rule 703 requires a court to admit an opinion based
12 on facts that are indisputably wrong" and "an opinion based totally on incorrect facts
13 will not speak to the case at hand and hence will be irrelevant"); *Pittman v. Cty. of*
14 *Union*, 2008 WL 906235, at *4 (D.N.J. Apr. 1, 2008) (disregarding a medical
15 expert's opinion on summary judgment because the expert based it on incorrect
16 facts).  Accordingly, Hendricks lacks the knowledge, skill, experience, training, and
17 education to provide opinions regarding how a lender and mortgage underwriter
18 would interpret the hypothetical raw credit report data provided them.
19       Indeed, multiple courts have found that on the issue of damages related to the
20 credit report impact of a particular reported item, Hendricks lacks the knowledge,
21 skill, or expertise to opine on such matters.  *See Anderson v. Equifax Info. Servs.*
22 *LLC*, 2018 WL 1542322, at *5 (D. Kan. Mar. 29, 2018) ("Hendricks does not
23 possess specialized training or experience in a field such as medicine, psychology, or
24 economics that would qualify him to opine about whether Plaintiff has incurred
25 certain types of injuries.  Furthermore, his opinions regarding Plaintiff's damages
26 amount to little more than speculation as to the injuries Plaintiff incurred.");
27 *Brinkman v. Account Resolution Servs.*, 2021 WL 4340413, at *5 (M.D. Fla. Sept.
28

23, 2021) (granting motion to exclude Hendricks testimony regarding plaintiff's damages and any legal conclusions); *Sandigo v. Ocwen Loan Servicing, LLC*, 2019 WL 2579341, at *5 (N.D. Cal. June 24, 2019) ("Ocwen is correct that Mr. Hendricks does not satisfy the requirements of FRE 702 or *Daubert* with respect to the scientific impact analysis required to quantify the impact of an item on Plaintiff's credit report or FICO credit score.")

### III. CONCLUSION

For the foregoing reasons, Trans Union respectfully requests that the Court grant its Motion in Limine No. 1. Plaintiff's counsel and Plaintiff's expert should be precluded from presenting evidence, testimony, or argument at trial regarding how a third-party, such as a lender and mortgage underwriter, would have interpreted the credit reporting data of Plaintiff's Trans Union credit report, had such information been furnished to such third party.

Dated: April 18, 2022                QUILLING, SELANDER, LOWNDS,
                                     WINSLETT & MOSER, P.C.


                                     By: */s/ Kristin L. Marker*
                                         Kristin L. Marker
                                         Counsel for Trans Union LLC

## CERTIFICATE OF SERVICE

**STATE OF TEXAS, COUNTY OF COLLIN**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Collin, State of Texas. My business address is 6900 N. Dallas Parkway, Suite 800, Plano, Texas 75024.

On April 18, 2022, I served true copies of the following document(s) described as **DEFENDANT TRANS UNION LLC'S MOTION IN LIMINE NO. 1 REGARDING TESTIMONY OF EVAN HENDRICKS TO EXCLUDE TESTIMONY OF EVAN HENDRICKS REGARDING THIRD PARTY INTERPRETATION OF PLAINTIFF'S CREDIT REPORTS** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 18, 2022, at Plano, Texas.

*/s/ Kristin L. Marker*
Kristin L. Marker

# SERVICE LIST

Michael F. Cardoza
Mike.Cardoza@cardozalawcorp.com
Lauren B Veggian
lauren.veggian@cardozalawcorp.com
Cardoza Law Corporation
548 Market St, #80594
San Francisco, CA, 94104
(415) 488-8041
(415) 651-9700 Fax
and
Dennis D. McCarty
Dennismccartylaw@gmail.com
McCarty and Raburn A Consumer Law Firm PLLC
2931 Ridge Rd, Suite 101 No. 504
Rockwall, TX 75032
(877) 994-3289
(817) 887-5069 Fax
***Counsel for Plaintiff***